JAMES J. SAUNDERS *v.* POLK HACKNEY.

CONVEYANCE. *Signature of grantor. Evidence.* A valid deed of conveyance of land may be executed in this State without the name of the grantor being subscribed thereto; as where the instrument is written by the grantor himself, his name being so inserted as to control the grant, and there is proof of delivery to the grantee, or other evidence or circumstances to show that the signature was intended to be final, the question of intent being one of fact for the jury.

FROM WILSON.

Appeal from the Circuit Court of Wilson county. R. CANTRELL, J.

STOKES & SON for Saunders.

MARTIN & BEARD and WILLIAMSON for Hackney.

COOPER, J., delivered the opinion of the court.

Action of ejectment to recover a tract of land consisting of eighty acres, commenced September 1, 1873. The circuit judge, who tried the case without a jury, rendered a judgment in favor of the defendant, and the plaintiff appealed.

Both parties hold under the same title. On August 5, 1846, by deed of that date registered February 8, 1848, one Robert Baskins conveyed the land to H. A. Drennon and Thomas Kirkpatrick, and they conveyed it to the plaintiff by deed dated September 13, and registered September 16, 1865. The defendant claims under a sheriff's sale of several hundred acres of land by virtue of executions against H. A. Drennon, levied July 15, 1865. The levies antedate the plaintiff's deed, but he insists that the levies do not cover the tract of eighty acres in controversy. He also insists that the tract of eighty acres belonged at the time of the levies to Drennon and Kirkpatrick, that it was a separate tract, and a sale of it with the other lands was void.

Drennon had owned for many years a body of land of several hundred acres nearly surrounding the tract in controversy. He had mortgaged to D. Cook, Jr., that part of his land lying to the east of the land in dispute, and on May 8th, 1865, he had sold and conveyed to the plaintiff, by deed registered the 15th of that month, one hundred and sixty acres of land adjoining the eighty acre tract on the south, but extending further west and bounding other parts of Dren-

non's land on the south. There was proof tending to show that Drennon had rented the eighty acres, or the improvements and enclosures thereon, for many years to a tenant, who paid the rent in work for Drennon. The levies, by virtue of which the sheriff sold to the persons under whom the defendant claims, read thus: "No personal property of H. A. Drennon to be found in my county, I levy this fi. fa. upon a certain tract of land belonging to the said Drennon described as follows: situated in district No. 20, Wilson county, bounded on the west by the lands of F. E. Shannon, north by those of Golladay, east by those mortgaged to D. Cook, Jr., by defendant Drennon, and south by those of defendant Drennon, containing three hundred acres."

There was proof tending to show that Drennon and Kirkpatrick had been partners in the purchase of lands in Wilson county, and that they had made some kind of division, Kirkpatrick taking exclusive possession and control of the lands on the west side of a turnpike, and Drennon the lands on the east side, among which was the eighty acre tract. Both were dead at the trial of the cause, and the defendant produced what purported to be a deed of partition in the handwriting of Kirkpatrick, which had been found among the papers of Drennon. This instrument commenced thus: " I, Thomas Kirkpatrick, have, for and in consideration of          dollars to me paid, as well as the other considerations hereinafter mentioned, bargained, sold, transferred and conveyed to H. A. Drennon, his heirs and assigns forever, all my right, title, claim and

interest in and to the following tracts or parcels of land." It then recited that he and Drennon, "as partners," had purchased certain lands, describing them, proceeding as follows: "And it being the desire of myself and said H. A. Drennon that division be made of all the above named lands, and that conveyances and acquittances be executed; in accordance with which, for and in consideration of the said sum of dollars, as well as for the several tracts of land now conveyed to me by the said H. A. Drennon, I do by these presents sell, transfer and convey to the said H. A. Drennon, his heirs and assigns forever, to-wit," etc. Then follows a description of certain lands conveyed, and among others the tract in controversy. The instrument concludes with a special warranty of title, after which are these words: "This      day of 1859." No signature is attached, nor is there any proof of a conveyance as recited from Drennon to Kirkpatrick. It is in proof that on March 5, 1859, Kirkpatrick made a general assignment of property, including some of the lands mentioned in the foregoing instrument as having been conveyed to him by Drennon, to a trustee for the benefit of his creditors.

There is proof that the Hackney family lived on the tract in dispute as tenants of Drennon for thirty years, paying rent by work for him. Two of Drennon's sons are examined as witnesses for defendant, one of whom was a witness to the plaintiff's deed. They say that they did not know that Kirkpatrick had any interest in the land until the making of this

deed.    The note given by plaintiff for the purchase
money was made payable to Drennon alone, the plain-
tiff testifying that he could not read writing, and that
he supposed it was made payable to both Drennon
and Kirkpatrick, and that the note was to be credited
with a security debt which he had paid for Kirk-
patrick.

The last call for boundary in the levies is, south
by the lands of defendant Drennon.    The contest in
the court below was whether this call was for the one
hundred and sixty acre tract sold in May, 1865, to
the plaintiff, or for the eighty acre tract.    The same
point is made in this court.    But the trial judge found
as a fact that the call was for the one hundred and
sixty acre tract.    And there is evidence to sustain the
finding.    For that tract was a more extensive bound-
ary of Drennon's lands on the south than the smaller
tract.    And the latter tract projected so far into the
body of the Drennon lands that it nearly cut off those
lands from the land mortgaged to Cook, so that, if
not included in the levies, the third call for boundary
of the levies—namely east by the lands mortgaged to
D. Cook, Jr.—would be without meaning.

The trial judge also found as a fact that the land
levied on, including the eighty acre tract, all belonged
to Drennon, constituting one tract, and might, there-
fore, be sold together: *Stephens* v. *Taylor*, 6 Lea, 307.
But he seems to have reached this conclusion by hold-
ing that the unsigned instrument of partition, written
by Kirkpatrick and found among the papers of Dren-
non, was a valid deed.    In that view, if this part

of the finding of fact depends upon the existence of a valid deed of partition, the question would be squarely raised whether a valid deed of conveyance of land can be executed in this State without the name of the grantor or bargainor being subscribed thereto. And it is somewhat curious that the point has never passed into judgment in this State.

At common law a deed conveying land required only to be sealed and delivered, and signing was unnecessary: Co. Lit., 35, *b.*; Com. Dig. Fait, B, 1; *Wright* v. *Wakeford,* 17 Ves., 459. And the weight of authority is that the statute of frauds made no change in this regard, notwithstanding Blackstone's expression of a doubt to the contrary: 2 Com., 306; *Taunton* v. *Pepler,* 6 Madd., 166; *Aveline* v. *Whisson,* 4 Man. & Gr., 801; *Cherry* v. *Hemming,* 4 Ex., 631. The statute of frauds, in all its provisions in relation to freehold estates, leases, wills, agreements and memorandums, required the writing to be signed by the party. But it was held within a few years after the passing of the act, that it was immaterial in what part of the writing the signature appeared. Thus, in the case of a will devising realty written by the testator himself, it was sufficient if the name only occurred in the usual exordium: "I, A. B., do make," etc.: *Lemayne* v. *Stanley,* 3 Lev., 1; *Ellis* v. *Smith,* 1 Ves. Jr., 11; *Morison* v. *Turnour,* 18 Ves., 175, 183; *Miles' Will,* 4 Dana, 1. So, of the memorandum or note of the contract or sale of lands, as well as of other contracts and agreements under the 4th and 17th sections: *Coles* v. *Trecothick,* 9 Ves., 234; *Ogilvie* v. *Foljambe,* 3

Mer., 53. "The meaning of the statute," said Lord Hardwicke, " is to reduce contracts to a certainty, in order to avoid perjury on the one hand, and fraud on the other; and, therefore, both in this court and the courts of common law, where an agreement has been reduced to such a certainty, and the substance of the statute has been complied with in the material part, the forms have never been insisted upon." *Welford* v. *Beazely*, 3 Atk., 503. The language of our court is to the same effect: *Blair* v. *Snodgrass*, 1 Sneed, 1, 25. And by statute the name of the maker of a holographic will may be inserted in some part of the will: *Crutcher* v. *Crutcher*, 11 Hum., 337; Code, sec. 2163. The instrument before us is in the handwriting of Kirkpatrick, and commences in the form held sufficient, under the statute of frauds, in the case of wills or contracts touching lands. And no signature at all was required to deeds conveying realty. Sealing and delivery were sufficient, and the presumption of delivery would arise from the possession of the instrument. The necessity of a seal has been abolished ·by statute. And the absence of the seal would not affect the question under consideration. For a seal was never necessary to a will at common law, under the statute of frauds: *Ross* v. *Ewer*, 3 Atk., 163; *Piatt* v. *McCullough*, 1 McLean, 70; *Wright* v. *Wakeford*, 17 Ves., 459.

Our system of conveyancing in this State has grown up under the act 1715, ch. 38, which in effect abolished the old English modes of conveyance, and substituted a mode of our own: *Thomas* v. *Blakemore*, 5 Yer., 113. The 5th section of that act, which was

the important one, has been brought into the Code as follows: "No deed of conveyance for lands, in what manner or form soever drawn, shall be good and available in law as to strangers, unless the same be acknowledged by the vendor or proved by two winesses, in the manner hereinafter prescribed, and registered by the register of the county where the land lies; and all deeds so done and executed shall be valid and pass estates in land, or right to other estate, without livery of seizin, attornment, or other ceremony in the law whatever:" Code, sec. 2005. The material modifications of the old act are in adding after the words "available in law," the words "as to strangers," and in omitting the requirement of registration within twelve months after the date of the deed. To authenticate a deed for registration our statutes have required the deed or "its execution" to be acknowledged or proved. The Code adopts the latter form: Code, sec. 2038. And even where the probate was authorized by proof of the handwriting of the grantor, the language was that it might be proved by any two persons acquainted with the handwriting of the person "who executed the deed," (act of 1831, ch. 90, sec. 10), or as brought into the Code, "of the maker of the same:" Code, sec. 2054. We have no statute prescribing the form of executing a deed, or either directly, or by necessary implication changing the mode of execution at common law after the statute of frauds of 29 Charles 2. It seems logically to follow that a deed written by the grantor himself, and containing his signature in the usual granting clause, "I, A. B., have sold, and do

hereby sell and convey," would be good, if actually delivered to the grantee as the deed of the grantor. Undoubtedly, the signature at the end of a deed, or other contractual instrument, has, by usage and universal custom, become so essential as evidence of complete execution, that there should be something more than the insertion of the grantor's signature, in his own handwriting, in the instrument, even if placed so as to control the entire instrument, to make it obligatory. There should be evidence or circumstances to show that the signature was intended to be final: *Walker* v. *Walker*, 1 Mer., 503; *Barry* v. *Coombe*, 1 Pet., 640. An acknowledgment of the execution of the instrument before witnesses or an officer authorized to authenticate probates, or delivery to the grantee, and perhaps other circumstances would establish the intent. The question of intent is one of fact for the jury: *Johnson* v. *Dodgson*, 2 M. & W., 653. And the trial judge in the case before us found the required intent. There is evidence to support the finding. For the instrument was found in the possession of the grantee, and the testimony shows a conveyance about the same time by the grantor, under a general assignment for the benefit of creditors, of a part of the land recited in this instrument as having been conveyed to him by the grantee in consideration therefor. The bill of exceptions tends to show, moreover, that the parties had previously agreed upon a partition of their lands, and had acted upon it for years.

At common law, partitions might be made between tenants in common by livery only without deed. Since

the statute of frauds it is settled in England that partition between such tenants can only be made in writing: *Johnson* v. *Wilson,* Willes, 248.   But one tenant in common may acquire title to the whole land by ouster and adverse possession.   In Mississippi and Texas a parol partition has been sustained because, say the courts of those States, the agreement is not within the letter or spirit of their statute of fraud, which only effect contracts for the sale of lands.   In other States parol partitions, followed by occupancy in severalty, have been held valid even at law either for defense (*Grimes* v. *Butts,* 65 Ill., 347), or offense: *Jackson* v. *Harder,* 4 Johns., 202.   But the weight of authority seems to be in favor of the English rule: Browne on Stat. of Fr., sec. 71.

In this State it has been held that a valid partition will be made by a decree which does not divest or vest title: *Johnson* v. *Britt,* 9 Heis., 756.   Or by a written agreement for partition acted on: *Thurston* v. *University of N. C.,* 4 Lea, 513.   And that exclusive adverse possession of the whole tract by one tenant in common, or the exclusive receipt of the rents and profits, no demand being made by the other tenants, would be evidence of actual ouster, and would vest title if continued long enough: *Hubbard* v. *Wood,* 1 Sneed, 279.   The finding in favor of the defendant in this case on the facts may be sustained upon the ground of exclusive possession or receipt of rents for seven years by Drennon, and certainly by Drennon and the defendant claiming under his title before suit brought.

Affirm the judgment.