# NOTES *v.* DOYLE.

# STEARNS *v.* DOYLE.

WILLS; WITNESSES; REVOCATION.

1. The subscribing witnesses to a will need not know the contents of the document; they may attest it without the presence of each other; they, or any of them, need not see the testator sign the will, provided he acknowledge his signature to each of the witnesses; and they need not even know that the document they have witnessed is a will.

2. The re-execution of a will requires the performance of the same formali-
   ties as were necessary in its original execution; and a will revoking
   a former will, or a codicil changing the terms of the will to which it
   is attached or refers, that is not attested by the requisite number of
   witnesses, is void.

3. Codicils which are illegally executed because of lack of the requisite
   number of attesting witnesses cannot be relied upon as a republication
   to make either of them a part of the will.   (Following *St. John's
   Parish* v. *Bostwick*, 8 App. D. C. 452.)

4. A will attested by two witnesses,—during a time when the statute re-
   quired three,—and two codicils making specific reference to the will,.
   and attached thereto, and attested by one and two witnesses respec-
   tively, are not, when taken together, and although a witness to both
   codicils was present at the execution of the will, which, however, he
   did not sign as a witness, sufficient to constitute a will attested by
   three witnesses, and does not constitute a revocation of a former will.

Nos. 1943 and 1944.   Submitted December 7, 1908.   Decided January 5,.
                                1909.

HEARING on appeals by the defendants in two actions of
ejectment which were consolidated, from a judgment for the
plaintiff upon an agreed statement of facts, a trial by jury hav-
ing been waived.                                   *Affirmed.*

The COURT in the opinion stated the facts as follows:

On the 12th of October, 1905, Harold E. Doyle, appellee,.
brought two actions of ejectment in the supreme court of the
District of Columbia against David Notes, Rufus C. Brooks,.
and Thomas L. Jones in the one case, and, in the other, against
Julia A. Stearns.   The defendants were terre-tenants of
certain real estate described in the declaration, and situated
in the District of Columbia.   One Regis Canevin, Bishop of the
Diocese of Pittsburg of the Roman Catholic Church, under
whom said tenants held, intervened in said causes, and was, by
order of the court, made a party defendant therein.   The de-
fendants pleaded the general issue, to which there was a replica-
tion, and the cases were consolidated and heard by the court,.
without a jury, on an agreed statement of facts.

It appears that James L. Toner, the common source of title, was a resident of the State of Pennsylvania, and died there in January, 1899. On the 5th of August, 1896, he executed a last will and testament, which was attested by three witnesses, by the terms of which, after a life estate was devised to his wife, he gave the property in question to his executors, with power of sale, in trust for the benefit of certain educational and charitable institutions. The plaintiff here claims under this instrument. In October, 1897, Toner made and executed another last will and testament, revoking the former instrument, by the terms of which he devised all of his property to his wife for her life, with the further provision that his estate was to be controlled and managed by his executors, named in the will, and the net proceeds to be paid to his wife annually. After a number of bequests to individuals and institutions specified in the will, he devised the residue of his property to the Benedictine Society of the Catholic Church of America. This will was attested by two witnesses only. In July, 1898, Toner executed a codicil increaing one of the legacies contained in the will of October, 1897, reducing another, and substituting the Roman Catholic Diocese of Pittsburg for the Benedictine Society of the Catholic Church as his residuary legatee and devisee should the society decline the bequest, together with some other immaterial changes. The codicil was attested by a single witness, James S. Moorehead. In August, 1898, Toner executed a fourth instrument in the form of a second codicil to the will of October, 1897, increasing the amount of a former legacy, adding a new legatee, and revoking a bequest contained in the October will. This instrument was attested by two witnesses, one of whom was Moorehead. It appears that each of the codicils referred to the will of October, 1897, and provided that the will should "in all other respects remain as now written." It also appears that the will of October, 1897, and the codicils thereto attached were written by James S. Moorehead, who was present at the execution and attestation of the will by the testator and the two subscribing witnesses, but who did not himself attest its execution.

The question here to be determined is whether the will of
October, 1897, and the codicils thereto attached, no one of which
was attested by three witnesses, are legally sufficient to revoke
the will of August 5, 1896, under which the plaintiff claims?
On trial in the court below, the second will and codicils were
held ineffectual for the purpose of revoking the former will, and
judgment was given for the plaintiff, from which judgment the
defendants prosecute this appeal.

*Mr. B. F. Leighton* for the appellants.

*Mr. J. J. Darlington* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

At the time of the execution of the various instruments in
question, the statute of Maryland relating to the execution of
devises of real estate was in force in this District, and provided:
"All devises and bequests of any lands or tenements devisable
by law shall be in writing and signed by the party so devising
the same, or by some other person in his presence and by his ex-
press directions, and shall be attested and subscribed in the
presence of said devisor by three or four credible witnesses, or
else they shall be utterly void and of no effect." Thompson's
Digest, sec. 4, 345. This provision of the Maryland statute is
substantially the same as sec. 5 of chap. 3, 29 Charles II.,
known as the statute of frauds.

The sole question here presented is whether or not a will at-
tested by two witnesses, followed by two codicils making specific
reference to the will and attached thereto, attested by a third
and a fourth witness, are, when taken together, sufficient to con-
stitute a will attested by three witnesses, and can be construed as
a revocation of a former will containing different devises of the
same property. It is well settled, both by the English and Amer-
ican decisions, that the subscribing witnesses to a will need
not know the contents of the document; they may attest it with-
out the presence of each other; they, or any of them, need not see

the testator sign the will, provided he acknowledge the signature to each of the witnesses; and they need not even know that the document they have witnessed is a will. This rule as to what may constitute a valid attestation is substantially as laid down by Lord Mansfield in *Windham* v. *Chetwynd,* 1 Burr. 421, and it has been followed and approved by the modern decisions.

The ancient English case of *Lee* v. *Libb,* 1 Shower, 69, is decisive of the exact point here under consideration. In that case the will was executed in 1678, two years after the passage of the statute of frauds. The will was attested by two witnesses, who subscribed their names in the presence of the testator. One year later the testator made a codicil changing in some minor respects the devises made in the will, and expressly confirming the will. The codicil was attested by two witnesses, one of these being a witness to the will.

The question presented was whether the third witness to the codicil could be regarded as a witness to the will. The court held that there were two distinct writings, and there were not three witnesses to either. This case has been approved and followed since, both in England and the United States. It is directly in point. Here, there are three distinct instruments, no one of which is attested by three witnesses.

Another case in almost all particulars the same as the one at bar is *Dunlap* v. *Dunlap,* 4 Desauss. Eq. 305. There the will was attested by two witnesses. The draftsman was present, but did not sign as a witness. A codicil was executed in the presence of the same draftsman and two attesting witnesses, one of whom had not attested the will. The codicil, as in the present case, referred to the execution of the will. The draftsman testified that he wrote both the will and the codicil at the request of the testator; that he saw both signed by the testator; that he saw the witnesses attest both instruments in the presence of the testator and in the presence of each other; and that he attached the codicil to the will in the presence of the testator. Upon this state of facts, the court, referring to the draftsman, said: "Mr. Taylor was present and saw the execution of the will, and might

Vol. XXXII.—27.

have become a subscribing and attesting witness under the statute; but that, in point of fact, he did not become so; he did not subscribe the will at all. Now the statute is so clear and peremptory on this point that it is impossible to get over it. Nay, if Mr. Taylor had, after the execution of the will in his presence, actually subscribed the will as a witness, but in another room, and out of the presence of the testator, this subscription would not be sufficient. The will, so imperfectly executed, cannot pass real estate. Such is the law, and I must be governed by it."

In this jurisdiction, in the case of *Re Porter,* 9 Mackey, 503, the court, considering a codicil signed by two witnesses who saw the testator sign it, and by a servant who did not see it signed or know what the document was, but signed it by command of the testator, said: "We accept as authoritative the line of cases which we have cited. They show that, within the meaning of the statute of 29 Charles II., attestation is properly made, either when the witness has seen the testator sign the instrument, or has heard him after it has been signed, acknowledge that the act was his. They show also that this acknowledgment may be conveyed either by words or by acts which indicate to the witness that he is called upon to act in the capacity of witness and to attest something which is treated by the testator as his act. They show, too, that it is not necessary to the effectiveness of this acknowledgment, or of the attestation, that the witness should know the nature of the instrument produced and submitted for his attestation."

Counsel for defendants in his brief has displayed a patient and able research, and cited many cases showing the great length to which courts will go in upholding the execution of a will in order to carry into effect the evident intention of the testator, but he has produced no approved case where the statutory number of witnesses has been supplied, either by considering a person present at the signing, but not formally attesting, a witness, or by considering each of the several witnesses to a will and its codicil or codicils as witnesses to the entire instrument. It is well settled, both in England and the United States, that a re-

execution of a will requires the performance of the same for-
malities as are necessary in its original execution; and a will
revoking a former will, or a codicil changing the terms of the
will to which it is attached or refers, that is not attested by the
requisite number of witnesses, is void.   1 Underhill, Wills,
sec. 217.

In the present case it is sought to furnish the requisite num-
ber of witnesses to the will by parol evidence of the presence
of Moorehead when the will was originally executed, or by hav-
ing his attestation of the codicils relate back to the attestation of
the will.   It is unnecessary for us to consider this contention,
since the codicils, being illegally executed for lack of the requi-
site number of attesting witnesses, cannot be relied upon as a
republication to make either of them a part of the will.   *St.
John's Parish* v. *Bostwick,* 8 App. D. C. 452.   The will and the
two codicils, each being defectively executed, it is not clear to
us how they can be so put together as to be construed into a legal
instrument for the conveyance of real estate.   To accomplish
this, it would not only be necessary to make the attestation of
Moorehead to the codicils relate back to the attestation of the
will, but, in order to have the requisite number of witnesses to
the codicils, it would be necessary to make the two attesting wit-
nesses to the will relate forward to the first codicil, and one of
them relate forward to the second codicil, though neither of
them, presumably, ever saw the codicils, or even knew of their
execution by the testator.   The mere statement of the proposi-
tion is sufficient answer to defendants' contention.

We have been cited to no case where a court has assumed to
supply an attesting witness by parol evidence.   Such a ruling
would open wide the door to all sorts of abuses.   It would be an
invitation to persons having an imaginary interest in the es-
tate of the testator to cure a defective will by fraud and perjury.
A valid attestation can only exist when the signatures of the
number of witnesses required by statute appear attached to the
instrument in such a manner as to indicate that they were placed
there with the knowledge and consent of the testator, either at

his request or by his command. The only case called to our attention where a different holding seems to have been made appears in Bacon's Abridgment, Vol. 7, marginal page 309, referring to *Lea* v. *Libb,* 3 Mod. 262, where it is stated that it was "adjudged, though it was objected, the will and codicil make but one will, and the circumstance of three witnesses wanting to complete the will was perfected by the codicil." This case is purported to have been decided in 1688, twelve years after the enactment of the statute of frauds. If the reference is authentic, the reasons for the judgment have not been followed by the subsequent English decisions, and it must be presumed that they were overruled and discredited.

The will in question not having been legally executed, it cannot either operate as a conveyance of the real estate here in controversy, or a revocation of the former will. The judgment is affirmed, with costs, and it is so ordered. *Affirmed.*