**In re ESTATE of Francesca HALL, Deceased.**

**Administration No. 342–69.**

United States District Court, District of Columbia.

May 25, 1971.

**1306**

John W. Jackson, Arlington, Va., for Navy Relief Society.

Wallace L. Duncan, Washington, D. C., for Charles R. Hoover, and Marion Edwyn Harrison, Administrators.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

This is an action filed by the Navy Relief Society to have a holographic writing of decedent, Francesca Ross Hall, admitted to probate as her last will and testament. Respondents herein are the two attorneys originally appointed as administrators of Miss Hall's estate, who represent decedent's two sisters, the only heirs at law. Miss Hall had spent the last thirty years of her life as an in-

mate of St. Elizabeth's Hospital and at the time of her death in 1968 it was assumed that she had died intestate. In the course of administering the estate, however, a handwritten, one-page document was unearthed in a safety deposit box at the Riggs National Bank, conservators of the estates of several members of the Hall family. The document, written in 1932, purported to give all of Miss Hall's estate coming from her grandfather Clapp, approximately 70% of her total estate at the present time, to "whatever organization cares for the disabled sailors and seamen of the United States Navy and their families." Upon learning of the existence of a will under which it could possibly qualify as a beneficiary, the Navy Relief Society filed this independent action to have the document admitted to probate.

After extensive discovery, respondents filed a motion for summary judgment solely on the issue of whether the writing could be admitted to probate as a valid will disposing of a substantial portion of decedent's estate.[1] It appearing to the Court that all persons, known and unknown, who are or might be heirs at law of Francesca Hall have been made parties and/or served with process, this cause came on for hearing on February 19, 1971, on respondents' motion for summary judgment, plaintiff's opposition, supplemental memoranda, and various depositions and exhibits. For the reasons spelled out below we find there is no dispute as to any material fact necessary to disposition of this case on motion, and we grant respondents' motion for summary judgment.

### The Facts

On November 30, 1932, Francesca Ross Hall made a paper writing entitled "Last Will and Testament" handwritten by her on the front and back of a single sheet of paper. The last line on the back side is an incomplete sentence reading, "All personal effects to be left to * * *" Although the writing is not signed by Francesca at the bottom of the back side, her name does appear in her own writing in the body of the document, at the top of the first page: "I, Francesca Ross Hall, * * *" The signatures of two witnesses, Robert C. Cousins, Sr. and Henrietta C. Lockner, also appear at the top of the first page. According to the testimony of Cousins in his deposition, he being the only surviving witness, decedent wrote another two pages after the page which is still extant. According to Cousins' "best recollection," decedent signed the last page at the bottom and then had Cousins attest the paper as a witness. Cousins declined to read any part of the document.

Although the authenticity of all signatures on the paper before us is uncontroverted, Cousins testified that neither he nor Lockner, the other witness, was present at the time the other one signed. Moreover, Cousins was not present at the time the first page was written and did not see decedent sign her name on it. According to Cousins' reconstruction of the events of that day in 1932, Lockner could not have been present when any part of the document was written, nor could she have witnessed decedent's signing the missing pages of the purported will.

It is not known, nor at this time is it possible to discover, what sort of disposition of other property was made in those missing pages, for at some time during the intervening years they were detached and destroyed. It is impossible to determine who detached the missing pages, or when they were removed, for the chain of custody of the document is not known. Bank officials feel that Riggs came into possession of the paper sometime in the early 1940's, before decedent's mother herself was committed

---

1. Miss Hall was declared incompetent shortly after writing the document in question in 1932. Although this fact obviously raises issues of competency to make a valid will, for the purposes of the pending motion, all parties have assumed *arguendo* that decedent was competent. Respondents' motion goes only to the issue of validity of the writing.

to a mental institution, and that it is probable that the mother had control of the document before then.

The writing was discovered in an unsealed envelope in a safety deposit box in the Riggs bank. Expert ultraviolet analysis obtained by plaintiff indicates that the envelope and letter were from matched stationery. That analysis also shows, from crease lines and type of pen and ink used, that the line "All personal effects to be left to * * * " was written contemporaneously with the rest of the document, even though at first glance it appears to have been squeezed in at the bottom. According to this expert, the envelope had never been sealed.

The Court thus is presented with an incomplete document which does not effect a total disposition of all of decedent's estate. Respondents contend that because the will is holographic, and not only is incomplete but also not properly signed or attested, the normal presumption of regularity is not operable, and that plaintiff, who has the burden of proof on the issue of its admissibility to probate, cannot sustain this burden on this or on any conceivable record which might be developed. Respondents urge that the writing in question is not a valid will entitled to be received in probate, specifically challenging probate of the document on three grounds: (1) decedent's name, which appears only in the first line of the text of the writing, while it identifies Miss Hall, is not a valid testamentary signature under District of Columbia law; (2) said writing is not a complete statement of decedent's final intentions; and (3) Mrs. Lockner's signature as an attesting witness was not duly subscribed according to statute. We will discuss each of these contentions.

## I.

The District has no special statute dealing with holographic wills. Section 103 of Title 18 of the Code sets forth the general requirements for execution of any valid will. That section provides that:

A will or testament other than a will executed in the manner provided by 18–107 [noncupative wills], is void unless it is:

(1) in writing and signed by the testator, or by another person in his presence and by his express direction; and

(2) attested and subscribed in the presence of the testator, by at least two credible witnesses.

Of course the burden of proving formal execution of a will rests on the party wishing to have the document admitted to probate, in this case the plaintiff Navy Relief Society. See Patten v. Pinkney, 60 App.D.C. 224, 50 F.2d 989 (1931). Where a will appears regular on its fact, the normal presumption of regularity would lighten the burden on the moving party. See Betts v. Lonas, 84 U.S.App.D.C. 206, 172 F.2d 759 (1948). The document before the Court, however, is not regular on its face. The last two pages of the original document, including the page with Francesca's signature, and that of the witness Cousins, are missing under unknown circumstances. It is uncertain whether the second witness, Mrs. Lockner, ever attested the original complete document on the last page. It is certain that Mrs. Lockner did not see decedent sign her name or write any part of the paper. The writing does not effect a complete disposition of decedent's assets. These facts, coupled with Miss Hall's admitted mental problems, place a heavy burden on plaintiff in its effort to show due execution. This is especially so in view of the strict interpretation accorded § 18–103:

"The District Code * * * requires all wills to be in writing, signed by the testator or some person in his presence by his express direction, and attested and subscribed in his presence by at least two credible witnesses * * * Unless the formalities prescribed are complied with, the instrument is void." Assoc. of Survivors of Seventh Georgia Regiment v.

Larner, 55 App.D.C. 156, 3 F.2d 201, 203 (1925)

Plaintiff contends that the paper before the Court is either a complete document in and of itself, or is a portion of a complete document, part of which has been lost. In order to support its first contention, that the Court is presented with a complete document, although one that does not completely dispose of decedent's estate, plaintiff argues the signature of Francesca Ross Hall appearing in the first sentence on the first page of the writing is a valid testamentary signature. It is settled that the purpose of a signature is both to identify the testator and to authenticate the document, and that in order to be testamentary in character a signature must indicate something more than the mere act of identifying the maker of the document in question.

> "[I]t is immaterial where the testator's signature was placed, if it was placed there with the intention of authenticating the instrument."

> "[I]f intended as a signature, a signing by the testator of his name at the beginning of the will * * * will be sufficient." 94 C.J.S. Wills § 177 at p. 979.

It is true that there is no requirement that a signature be at any particular place on the document to be effective, but there must be proof that the testator intended the signature to bind his intention. Porter v. Ballou, 303 Mass. 234, 21 N.E.2d 237 (1939); Hamlet v. Hamlet, 183 Va. 453, 32 S.E.2d 729 (1945). Compare Ex Parte Cardoza, 135 Md. 407, 109 A. 93 (1919); In Re McCalip's Will, Sur., 119 N.Y.S.2d 55 (1953). In the leading case of Ex Parte Cardoza supra, the Court admitted a holographic will to probate which had not been signed at the conclusion, noting that there was an absence of any indication in the document that decedent intended to add a further signature. Of course, we know that Francesca not only intended to sign the writing in question, but that she did so sign on a later page, which would seem to indicate lack of intent on her part to regard her first signature as testamentary or to have it so regarded by others.

It may be argued that the fact that the witnesses apparently were asked to and did sign at the beginning of the will indicates Francesca's intent to have her signature in the first sentence authenticate the document. If these signatures were immediately next to decedent's name, that argument would be stronger. However, they appear at the very top of the page under the word "Witnesses." It seems most likely that Francesca knew little of the formalities necessary to properly dispose of property, and that the witnesses were asked to sign at the top for no particular reason. Further, such argument ignores the undisputed testimony of witness Cousins that Francesca wrote two more pages (now missing) which she signed at the end and which signature Cousins witnessed and then signed as an attesting witness.

When plaintiff originally raised the argument that the extant writing could be viewed a complete document, it was at least partially relying on the supposition that the unfinished sentence at the bottom of the back page was a later interlineation. But plaintiff's own expert has reported that this supposition is unfounded, that the partial sentence was indeed written at the same time as the rest of that page. This fact adds weight to the Court's conclusion that plaintiff simply has not carried its burden in showing Francesca's signature on the first page to have been executed with testamentary intent since it indicates that she intended to dispose of other assets in the remainder of the will, and that the present writing is incomplete. See 94 C.J.S. Wills § 205 at p. 1046. Plaintiff would be in a stronger position if the envelope had been sealed at the time it was discovered, because that would have been some indication of testator's intent at the time it was sealed, although there would still remain problems with the chain of custody. But we know, again from the report of

plaintiff's expert, that the envelope was never sealed. Plaintiff simply has no facts at its disposal to show separability of the extant portion of the will from the original complete writing. See Creek v. Laski, 248 Mich. 425, 227 N.W. 817 (1929). Because it is manifestly incomplete and because the testator's signature on the first page cannot be viewed as carrying with it any testamentary intent, the Court cannot accept the paper before it as a complete, duly executed document, entitled to be admitted to probate.

## II.

■ The writing submitted for probate is not a complete statement of decedent's final intentions. Plaintiff argues that, even if the Court does not agree that the writing in question constitutes a complete document, the facts support the conclusion that it is part of a longer, complete document, which was duly executed by decedent and properly attested by Cousins and Lockner, and that the single remaining page, which disposes of over 70% of decedent's estate, should be admitted to probate.

As discussed above, the writing contains an unfinished sentence at the bottom of the back page reading "All personal property to be left to * * *" Plaintiff's own expert reported to the Court that analysis of the crease lines and the type of pen and ink used indicated that this line was not added at some later date, but that the document was written at one sitting. This is consistent with Cousins' testimony that two more pages were written and signed at the end by testator and himself. As stated in Corpus Juris Secundum,

> The presumption is that the writer did not intend the paper to be his will, where it does not purport on its face to be a will, or is of equivocal character, or where, although in testamentary form, it is apparently incomplete or unfinished, as where the will is not subscribed by the testator, even though his name is inserted in some

part of it * * * 95 C.J.S. Wills § 384(a) (2) at p. 273.

If the circumstances surrounding the removal of the last two pages of the writing were known, it might well be that plaintiff could show the present existence of part of a longer document which partially represents testator's last wishes, even though not completely dispositive of the estate. For example, if there were evidence that the original complete document had been sealed in the envelope by Francesca herself, before she was committed to St. Elizabeth's Hospital, and that someone else had therefore detached the missing pages, the trier of fact might properly find that the portion of the document remaining should be admitted since it would indicate at least part of decedent's final intent. But the chain of custody of the document from the year 1932 to the time it was discovered in the Riggs bank is unknown, and the envelope was never sealed. No amount of testimony at trial would elucidate this area any better. It is even arguable that decedent drew up the longer document, properly signed it at the end, had it attested and then at some later time destroyed the latter pages intending thereby to revoke the whole will. This would be analagous to tearing off the signature at the bottom of a will. Decedent's final intentions as to the original complete document simply are uncertain and we, therefore, cannot allow the remaining portion to be admitted to probate. See 94 C.J.S. Wills § 159 at p. 949. The case cited by plaintiff for the proposition that a portion of a testamentary document may be admitted to probate, Kultz v. Jaeger, 29 App.D.C. 300 (1907), actually only allowed a document ineffectual in disposing of property to be admitted for the purpose of designating an executor. Of course, our situation is not analagous.

## III.

■ The purported will was not validly attested by Lockner. There is no evidence at all, nor could any be presented if there was a trial, on attesta-

tion of the complete original document by Lockner. We know that she signed on the first page, although we do not know when. But the testimony of Cousins in his deposition is clear that Francesca finished the entire document in one sitting, signed it, had him witness and sign it, and then went upstairs to bed. Since the last pages are missing, we just do not know if Lockner ever signed at the end. Even if Lockner signed, there is no evidence that the signing by Francesca and attesting of the paper by Lockner was a substantially contemporaneous transaction.

█ As discussed above, District law requires that even holographic wills be attested and subscribed in the presence of the testator by two witnesses, although they need not sign in each other's presence or physically observe the other's signature. Notes v. Doyle, 32 App.D.C. 413 (1909); Betts v. Lonas, 172 F.2d 759 (1948). See also 94 C.J.S. Wills § 194 at p. 1030. Plaintiff urges that the normal presumption of regularity should apply since we have admittedly authentic signatures of the testator and the two witnesses on the present document. It is the Court's view, however, that for all of the reasons discussed above, this document cannot be viewed as being regular on its face, and that therefore due execution cannot be presumed. Plaintiff has not and cannot meet its burden of showing that we have a portion of a longer, duly executed document, which should be given present effect. As set forth in 95 C.J.S. Wills § 384(a) at p. 268:

> [T]he burden is on the proponent to prove the due execution of the instrument propounded as a will * * * Accordingly except as he may be aided by presumptions of regularity, the proponent must prove that the instrument offered as a will was duly executed with all the formalities required by law, that is, that the will was in writing, that the testator affixed his signature or acknowledged the signature to be his, and declared the instrument to be his will, in the presence of the requisite number of competent witnesses, and that the witnesses subscribed their names as such in the presence of the testator and at his request; and the proponent also has the burden of explaining any suspicious circumstances in the execution of a will.

█ Plaintiff finally argues that even if the normal presumption of regularity cannot be indulged, under the Ancient Documents Doctrine, the paper may be properly admitted to probate. Wigmore states the rule that under certain conditions, an "ancient document" may be accepted as being genuinely executed for purposes of being submitted to a jury. The doctrine is applicable to wills. See Wigmore on Evidence § 2145. The reason for the rule is the practical unavailability of testimony from those who actually witnessed the execution. Wigmore, *supra*, § 2137. The rule thus is a presumption of regularity in execution. But the presumption must be justified from the face of the document. The appearance of the document must be "unsuspicious."

Wigmore points out that the prime consideration behind this criterion is avoidance of forged documents, or the exertion of undue influence by a third party in their execution. There is no suggestion of forgery or undue influence in our case, and the authenticity of the signatures has been stipulated. The doctrine applies only to documents executed more than thirty years before. The will before the Court was drawn up more than 38 years ago. But the treatise points out that, in addition to the document being "unsuspicious" and regular on its face, custody of the document is also an important factor in considering whether the doctrine should be applied:

> [A]t the time of its original discovery [the document] must have been in some place where it would be natural to find a genuine document of such a tenor as the one in question. § 2139

Although the will was found in a safe deposit box in a bank, arguably a "natural" place for such a document, it is

completely unclear how it came to be there, or at what time. A period of at least eight years is unexplained and unaccounted for. As pointed out in a Connecticut case,

> If a will is 30 years or more old, if it came from the proper custody, and if it is free from all suspicion, then all the essential prerequisites in favor of its execution are presumed to be satisfied, and no testimonial proof is necessary to make it admissible into proof * * * Appeal of Jarboe, 91 Conn. 265, 99 A. 563 (1917).

Particularly where the writing has been found in an unsealed envelope, with a portion missing, it would be inappropriate to use a limited rule of circumstantial evidence to presume regularity in execution so as to permit admission of the document to probate for full testamentary purposes. Courts have a certain discretion in use of the presumption, and we decline to exercise it in this case. See In Re McGary's Estate, 127 Colo. 495, 258 P.2d 770 (1953).

The foregoing comprises the Court's Findings of Fact and Conclusions of Law. An order consistent with the above has been entered this day.