250 P.3d 558 (2011)
In the Matter of the ESTATE OF Gloria WATERLOO, Deceased.
Jack Zimmerman, Appellant,
v.
Vernon H. Allen, Jr.; Rev. Lee Allen, Sr.; The Estate of Dorothy Gale Duncan; Ralph M. Allen, Jr.; Steven E. Allen; Virginia Wyatt Cavenaugh; Benjamin F. Allen; Ashley Allen; June Allen Williams; Clarence W. Allen; Ervin Ray Allen; Wilmer E. Allen; Lawrence E. Allen; Greg Allen, Sr.; East Valley Fiduciary Service, Inc., as Personal Representative for the Estate of Gloria Anne Waterloo, Appellees.
No. 1 CA-CV 10-0331.
Court of Appeals of Arizona, Division 1, Department B.
March 8, 2011.
*559 Rosepink & Estes, P.L.L.C. By Robert J. Rosepink, David J. Estes, Michele Leigh Goens, Scottsdale, Attorneys for Appellant.
Jackson White PC By James L. Tanner, Mesa, Attorneys for Appellee East Valley Fiduciary Service, Inc.
Bellah & Associates, PLLC By Richard Bellah, Charley L. Laman, Nathaniel Nickele, Glendale, Attorneys for Other Appellees.

OPINION
JOHNSEN, Judge.
¶ 1 We hold in this case that a testator's failure to create a "list of final instructions" that was to be attached to her will did not invalidate the testamentary intent with which she created the will. Accordingly, we reverse the superior court's order declining to admit the will to probate and remand for further proceedings.

FACTS AND PROCEDURAL BACKGROUND
¶ 2 According to the record, Gloria Waterloo belonged to a congregation of which Jack Zimmerman is the "Senior Rabbi." On April 11, 2008, Zimmerman and his wife, Sandie, visited Waterloo in a hospice facility. Because handwriting was difficult for Waterloo, she dictated to Sandie a document that stated:[1]
To Whom It Concerns: April 11, 08
My name is Gloria Anne Waterloo. I live at [address]. The reason for this letter is so that my wishes are carried out by Jack Howard Zimmerman Also known as Rabbi Jack. He lives at [address].
1. I want Him Jack Zimmerman to have full guardianship of My Health Decisions along with Myself.
2. Also as far as my finances, and realestate transaction I want Jack Zimmerman to have full guardianship along with Myself.

*560 3. Properties are in CCA As of 2003, I have properties in many countries in CCA.
4. After I am deceased Jack has full instructions from me. Attached is a list of final instructions I want to leave Jack Howard Zimmerman A sum of $3,000,000 or more Three Million dollars, or More. He has full & final guardianship of my finances & realestate properties.
5. As far as a Memorial Service I want Rabbi Jack to organize All of it. I am to be buryed next to my husband Dale Bec Waterloo at Sunny Slope Memorial in Sunny Slope, Phoenix.
¶ 3 In the presence of the Zimmermans, Waterloo reviewed the one-page document, initialed each of the five numbered paragraphs and dated and signed the document at the bottom. Notwithstanding the document's reference to an "[a]ttached ... list of final instructions," Waterloo dictated no such list and no such list ever was attached to the instrument. About an hour after Waterloo dictated the document, another couple from the congregation arrived to visit her. One of them read the document aloud to Waterloo and confirmed with her that it represented her wishes. Neither the Zimmermans nor the other couple signed the document as witnesses.
¶ 4 Waterloo died less than a month later. After first petitioning for a declaration that Waterloo died intestate, Jack Zimmerman petitioned the court to probate the document as a will and filed a "Petition for Leave to Allow Witnesses to Sign Will." In connection with the latter petition, he filed affidavits by himself and his wife attesting that they witnessed Waterloo sign the document. The other couple also averred that Waterloo confirmed to each of them that the document represented her wishes and acknowledged her signature to them. See Ariz.Rev.Stat. ("A.R.S.") § 14-2502(A)(3) (2005) (a will must be "signed by at least two people" within a reasonable time after they witness the signing of the will or the testator's acknowledgement of her signature). The superior court ruled that the document was witnessed within a reasonable time as required by § 14-2502(A)(3).
¶ 5 Waterloo's heirs then moved for partial summary judgment, arguing the document could not be admitted to probate because it was incomplete.[2] They contended that because it referenced a "list of final instructions" that did not exist, the document failed as a will because it did not represent Waterloo's full testamentary intent. The court granted the heirs' motion, ruling it could not ascertain Waterloo's "complete intent ... without knowing what was to be contained in the list of instructions." After the court denied Zimmerman's motion for reconsideration, Zimmerman timely appealed. We have jurisdiction pursuant to A.R.S. § 12-2101(J) (2003).

DISCUSSION

A. Standard of Review.
¶ 6 Summary judgment is proper when "the pleadings, deposition[s], answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c). We review the superior court's grant of summary judgment de novo. Valder Law Offices v. Keenan Law Firm, 212 Ariz. 244, 249, ¶ 14, 129 P.3d 966, 971 (App. 2006). We view the facts in the light most favorable to the party against whom summary judgment was entered. Prince v. City of Apache Junction, 185 Ariz. 43, 45, 912 P.2d 47, 49 (App.1996).

B. The Requirements of a Will.
¶ 7 A will is a "legal declaration of [one's] intentions, which he wills to be performed after his death." In re Miller's Estate, 54 Ariz. 58, 61, 92 P.2d 335, 337 (1939) (citation omitted); see A.R.S. § 14-1201(59) (Supp.2010) ("`Will' includes ... any testamentary instrument that merely appoints an *561 executor....").[3] "It is not necessary that the testator use the word `will' in his last testament. No particular words need be used, it being sufficient if it appears that the maker intended to dispose of his property after his death." Miller's Estate, 54 Ariz. at 62, 92 P.2d at 337. "A letter written and signed by the author may serve as his last will where it contains testamentary language indicating that it was so intended." Id.
¶ 8 To be treated as a will, an instrument that satisfies the requirement of testamentary intent must be properly executed. See A.R.S. § 14-2506 (2005) ("A written will is valid if executed in compliance with § 14-2502."). A non-holographic will must be "[s]igned by the testator or in the testator's name by some other individual in the testator's conscious presence and by the testator's direction," and must be signed by two witnesses. A.R.S. § 14-2502(A).
¶ 9 An instrument that demonstrates testamentary intent and complies with the statutory execution requisites "should be admitted to probate as a will even though all of its terms are not capable of being enforced." In re Hesse's Estate, 62 Ariz. 273, 277, 157 P.2d 347, 349 (1945). The only issue in a will contest is whether the will is valid; questions about how the will should be construed are resolved after the will is admitted to probate. Id. at 277-278, 157 P.2d at 349; compare A.R.S. § 14-3401(A) (2005) ("A formal testacy proceeding is litigation to determine whether a decedent left a valid will.") with A.R.S. § 14-3407 (Supp. 2010) ("If a will is opposed by a petition for a declaration of intestacy, it shall be determined first whether the will is entitled to probate."). One who files a petition to admit a will to probate bears the burden of proving the allegations of the petition; one who contests the will bears the burden of proving "the grounds of [the] contest." Hesse's Estate, 62 Ariz. at 278, 157 P.2d at 349; see A.R.S. § 14-3407.

C. The Document Demonstrates Waterloo's Testamentary Intent.
¶ 10 There is no question that Waterloo signed the document at issue (she even initialed each of the five numbered paragraphs that make up the substance of the document). As for the statutory witness requirement, Waterloo's heirs did not cross-appeal from the superior court's decision accepting the affidavits of the Zimmermans and the other couple for that purpose. Thus, the only issue before the superior court in the contested will proceeding was whether the letter Waterloo dictated contained her testamentary intent. See Hesse's Estate, 62 Ariz. at 277-278, 157 P.2d at 349; In re Gutierrez' Estate, 189 Cal.App.2d 165, 11 Cal. Rptr. 51, 54 (1961) ("Upon the contest of a will, ... the court will ordinarily not construe the instrument.... The only issue before the court is whether the instrument contested is or is not the will of the testator, and the power to construe will be exercised only insofar as is necessary to the determination of that issue.") (citation omitted).
¶ 11 A "testamentary instrument" is an instrument that operates only upon, and by reason of, the death of the maker. See, e.g., id. at 52; Cramer v. Hartford-Connecticut Trust Co., 110 Conn. 22, 147 A. 139, 141 (1929); Vigil v. Sandoval, 106 N.M. 233, 741 P.2d 836, 838 (N.M.Ct.App.1987); City Bank Farmers Trust Co. v. Neary, 27 N.Y.S.2d 979, 983 (N.Y.Sup.Ct.1940); Blair v. Blair, 111 Vt. 53, 10 A.2d 188, 189 (1940).
¶ 12 The heirs correctly do not dispute that the document Waterloo dictated contains testamentary language indicating it was intended to constitute a will. Waterloo gave burial instructions in the letter and made provisions for what was to happen "[a]fter I am deceased." The use of certain formal phrases and the care that Waterloo took to initial the sections of substance and to sign and date the instrument also demonstrate testamentary intent. See generally In re Harris' Estate, 38 Ariz. 1, 6, 296 P. 267, 269 (1931).
*562 ¶ 13 The superior court, however, refused to admit the will to probate based on its conclusion that the absence of the "list of final instructions" referenced in Waterloo's letter made it impossible to determine her "complete intent." On appeal, the heirs argue that we should affirm because the absence of the "list of final instructions" means that, as a matter of law, Waterloo lacked testamentary intent when she signed the letter. See In re Hall's Estate, 328 F.Supp. 1305, 1311 (D.D.C.1971) ("The presumption is that the writer did not intend the paper to be his will, where it does not purport on its face to be a will, or is of equivocal character, or where, although in testamentary form, it is apparently incomplete or unfinished, as where the will is not subscribed by the testator....").
¶ 14 In considering this argument, we are mindful that, as a general matter, an instrument will be admitted to probate even if it is vague or incomplete in some respects, as long as "there is a single portion of the instrument which is certain in its character." Harris' Estate, 38 Ariz. at 5, 296 P. at 269. Therefore, if some of an instrument's testamentary terms are clear, a court may not decline to admit the will to probate simply because other terms are indefinite. See id.
¶ 15 Although this rule normally will doom the argument that an instrument that demonstrates testamentary intent is too ambiguous to admit to probate, we understand the heirs to argue not that the instrument is fatally ambiguous but that the omission of the "list of final instructions" necessarily means that Waterloo lacked testamentary intent when she created the letter. For the reasons set forth below, however, we conclude that the absence of the list does not disprove the presumption we are required to apply in favor of testacy. See In re Estate of Krokowsky, 182 Ariz. 277, 280, 896 P.2d 247, 250 (1995) ("courts favor testacy over intestacy"); Chambers v. Warren, 657 S.W.2d 3, 6 (Tex.Ct.App.1983) ("The mere fact that a testator executed a will is strong evidence the testator intended to die testate and creates the presumption that the testator intended to dispose of his or her entire estate.").
¶ 16 The heirs rely on Hall's Estate, but the facts in that case are unlike those presented here. At issue there was a multi-page handwritten will of which remained only the first sheet of paperfront and back. 328 F.Supp. at 1307. On the front of the page was the title "Last Will and Testament." The handwriting on the reverse side ended with an incomplete sentence: "All personal effects to be left to ..." A witness testified the testator had written "another two pages" and signed the will at the bottom of the last page. Id. The single remaining sheet was dated in November 1932 and discovered in an unsealed envelope in a bank safe deposit box after the testator's death more than 30 years later; who destroyed the other two pages, and when, were unknown. Id. The court noted the testator herself might have destroyed the other pages in an attempt to revoke the will, and held the remaining one-page document could not be admitted to probate because the decedent's "final intentions as to the original complete document simply are uncertain." Id. at 1310; see also In re Maginn's Estate, 281 Pa. 514, 127 A. 79 (1924) (affirming refusal to admit an instrument to probate because only three pages of the original seven-page instrument could be located).
¶ 17 By contrast to the facts in Hall's Estate and Maginn's Estate, here we do not have a situation in which a decedent made a writing that now cannot be found. Although the instrument Waterloo dictated mentioned a "list of final instructions," the undisputed evidence is that no such list was created. Significantly, Waterloo executed the instrument knowing that she had not created the list.
¶ 18 For the same reason, In re Estate of Erickson, 806 P.2d 1186 (Utah 1991), is not persuasive. At issue there was an "instrument" consisting of three handwritten unnumbered note cards, none of which bore the decedent's signature. One of the cards was titled "Last Will & Test," and each of the cards contained bequests of certain property. The petitioner argued that the words, "I Robert E. Erickson do hereby state that I leave and bequeath," which were handwritten at the top of one of the cards, evidenced the *563 decedent's intent to sign the instrument. Id. at 1188. The court observed that a handwritten name that appears somewhere other than at the end of an instrument may constitute the required signature, as long as the document appears "to be a complete testamentary instrument." Id. at 1189. But it held the cards could not be admitted to probate because they "contain[ed] nothing to indicate that Erickson had finished his writing." Id. at 1190.
¶ 19 By contrast, Waterloo placed the date and her signature at the bottom of the single page that contained what she had dictated. From that we conclude she was satisfied with what she had dictated and that she believed that the instrument she executed adequately expressed her testamentary intent even though it lacked the "list" that she apparently had once intended to create.[4]
¶ 20 Souhegan National Bank v. Kenison, 92 N.H. 117, 26 A.2d 26 (1942), superseded by statute as stated in Attorney General by Anderson v. Rochester Trust Company, 115 N.H. 74, 333 A.2d 718, 720 (1975), is helpful to our analysis. In that case, the instrument directed that funds be distributed "in accordance with a suggestive memorandum which I have prepared and hereby make a part of this will." As here, however, no memorandum ever was prepared. The court rejected the argument that the absence of the memorandum rendered the will fatally incomplete: The testator executed the instrument knowing that the memorandum did not exist, "and his misstatement of a fact within his knowledge has no bearing to give a conditional quality to it." Id. at 29. See also Maines v. Davis, 227 So.2d 844, 845 (Miss.1969) (testamentary intent shown even though signed instrument ended, "I will finish this later"); In re Holland's Estate, 180 Or. 1, 175 P.2d 156, 167 (1946) (apparently uncompleted sentence containing address of property to be disposed did not render will fatally incomplete because testator executed it knowing what it said); cf. In re Devlin's Estate, 198 Cal. 721, 247 P. 577, 578, 580 (1926) (unsigned instrument that ended "I will state to you later what I would wish you to do with the balance ... I am tired writing Goodnight" not admitted to probate because it lacked testamentary intent).
¶ 21 The heirs argue, however, that public policy requires us to affirm the order denying probate. They argue that a contrary ruling would encourage the filing of partial wills for probate, with petitioners submitting "only pages of a will that are advantageous to them, while withholding pages that are not in their favor." But the heirs do not allege any fraud on Zimmerman's part, and the situation the heirs posit is not present here, when the evidence is undisputed that the "missing" document never existed.
¶ 22 Zimmerman asks that beyond ordering that the letter be admitted to probate, we construe the instrument to contain a bequest to him of "$3,000,000 or more."[5] The heirs argue that, at most, the letter is a direction that Zimmerman be appointed "guardian" of Waterloo's estate and assert that even if the letter reflected Waterloo's testamentary intent that Zimmerman act in some capacity on her behalf with respect to her estate, it fails because we cannot know the "final instructions" that are to guide Zimmerman in that endeavor.
¶ 23 We decline both sides' suggestions to construe the will and instead remand the matter to the superior court to conduct all further proceedings that may be required to determine the meaning of the instrument's various terms. See Hesse's Estate, 62 Ariz. at 277-78, 157 P.2d at 349 ("A `will contest,' strictly speaking, is any kind of a litigated controversy concerning the eligibility of an instrument to probate as distinguished from the validity of the contents of the will.... Legal questions involved in the construction or meaning of a validly executed will are not grounds of contest."); Harris' Estate, 38 Ariz. at 6, 296 P. at 269 (construction of a will "is a matter for the trial court at a subsequent time").

*564 CONCLUSION
¶ 24 For the reasons stated above, we vacate the summary judgment and remand with instructions to the superior court to admit Waterloo's will to probate.
CONCURRING: ANN A. SCOTT TIMMER, Chief Judge, and PHILIP HALL, Judge.
NOTES
[1] We recount the document precisely as Sandie wrote it, except that we omit the addresses it included.
[2] Waterloo's heirs (the heirs and/or their estates are among the appellees in this appeal) are her cousins. The other appellee, East Valley Fiduciary Service, Inc., filed an answering brief stating it "takes no position with regard to the issues propounded by the Appellant."
[3] We cite the current version of a statute when no material revisions have occurred since the events at issue.
[4] There is no suggestion in the record that a writing containing the referenced "list of final instructions" existed before April 11, 2008, when Waterloo dictated the instrument at issue here.
[5] According to an accounting the personal representative filed in November 2009, the entire estate then was valued at $254,245.