## W. M. NICLEY v. CURTIS (CURT) NICLEY, Adm'r, etc.—276 S. W. (2d) 497.

Eastern Section. June 30, 1954.

Petition for Certiorari denied by Supreme Court, March 11, 1955.

D. S. Beeler, of Rutledge, for plaintiff in error.

C. K. Ellis, of Rutledge, for defendant in error..

HOWARD, J. This is a will contest involving the holographic will of Pearlie Nicley, a spinster, who died in Grainger County, Tennessee, on March 27, 1952, leaving both personal and real property. Named as beneficiaries in the will were a brother, W. M. Nicley, the contestant herein, and several nieces and nephews, including Curtis Nicley, who, after the will was probated in common form in the County Court of Grainger County, was named as Administrator, with the will annexed, of the deceased's estate.

The will, which the undisputed proof of four witnesses showed was written entirely in the handwriting of the deceased on two separate pieces of note paper, was started with an indelible pencil and completed with a lead pencil, and was neither dated nor signed. The undisputed proof further showed that the will was found by Curtis and Lloyd Nicley, the two chief beneficiaries, among deeds and other valuable papers of the deceased's in a dresser drawer of her home shortly after her death, and reads as follows:

"Pearlie Nicley, Liberty Hill, Grainger County, Tennessee, being of sound mind and disposing memory, realizing the brevity of life and the certainty of death and desiring to settle my earthly estate while yet active both in body and mind, do hereby make and publish this my last will and testament, hereby revoking and making void any and all wills heretofore by me executed.

"First. I desire that all my just and honest debts be paid by my Executor hereinafter named as soon

after my death as possible out of any moneys on hand or the first to come into his hands; said debts to include the expenses of my last sickness and funeral, and the cost of a monument, or marker, to my Father's Grave, the cost to be in line with my manner of living.

"Second. After all the items of debts or charges in the first section hereof are paid, I will and bequeath all the residue of my personal estate of every kind and *character* to my Beloved nephews, Curt Nicley and Lloyd P. Nicley.

"Third. I will and bequeath Clay Nicley $(1.00) Dollar, Forest Nicley $(1.00) Mamie Nicley Acuff, One Dollar $(1.00) Wm. Nicley One Dollar $(1.00)"

The trial in the Circuit Court resulted in a jury verdict sustaining the will. This verdict was approved by the trial judge and judgment was accordingly entered. On the overruling of the contestant's motion for a new trial, this appeal was granted and perfected, and errors have been assigned which will hereinafter be considered.

■■ First, it is urged that the paper writing probated as the will of the deceased was invalid as a holographic will, because it was neither dated nor signed by the testator. The rule seems to be well settled in this State that the position of the testator's name in a holographic will need not appear at the conclusion of the document, but will suffice if the document shows that his name was subscribed, as here, in the body of the will. Tate v. Tate, 30 Tenn. 465; Hooper v. McQuary, 45 Tenn. 129; Saunders v. Hackney, 78 Tenn. 194; Reagan v. Stanley, 79 Tenn. 316; Sizer's Pritchard Law of Wills and Executors, 2nd Ed., Sec. 235, p. 289; Administration of Estates in Tennessee, Sec. 742, p. 451; 68 C. J., Sec. 404, p. 722. Nor need a holographic will be dated. Pulley v. Cartwright,

23 Tenn. App. 690, 137 S. W. (2d) 336; 57 Am. Jur. 636, pp. 434, 435; 68 C. J., Sec. 403, p. 720.

Next it is urged that the will was incomplete because the executor was never named therein in accordance with the testatrix' expressed intention, and that no evidence was adduced showing that she was prevented from completing the will by "Act of God" or that she did not abandon the idea; that the two pieces of paper were just a memorandum similar in many respects to the will of her brother, S. B. Nicley, who died several years previously and who was the father of the nieces and nephews named as beneficiaries by the testatrix.

In this State it seems to be the general rule that the testator's failure to name an executor does not invalidate a holographic will. Pulley v. Cartwright, supra; Sizer's Pritchard Law of Wills and Executors, 2nd Ed., Sec. 3, p. 4; 57 Am. Jur., Sec. 29, p. 56.

The proponent introduced two disinterested witnesses who, prior to the testatrix' death had visited in her home on numerous occasions. One of these witnesses, Mrs. Della Berry, testified that the testatrix told her during the month of November, 1951, that she, testatrix, wanted Curtis and Lloyd to be paid for taking care of her, and that the testatrix stated that she was writing her will. This witness also stated that she had received letters from the testatrix in which she used both indelible and lead pencils.

The other witness, Mrs. Vicey Graves, testified as follows:

"Q. * * * Did she ever make any statement to you about what she was going to do with her property? A. She said she was going to fix it to Curt and Lloyd.

"Q. Curt and Lloyd? A. Yes sir.

"Q. Were they ever around there while you was there? A. Yes sir, they was there.

"Q. Both of them? A. Both of them, every day and night.

"Q. Did anyone else of the kinfolks besides the nephews or brother come to see her often? A. Yes, the brother come once.

"Q. He came once? A. Yes, while I was there.

"Q. How long was you there? A. Well, I went up there in the Fall, and she died in the Spring.

"Q. About what month in the Fall? A. Lets see. I went up there in tobacco time, they come after me to come stay with her till they could get their tobacco handed off.

"Q. And you stayed with her till she died? A. I stayed with her till she died.

"Q. And you say her brother was there once while you was there? A. Yes, he came once while I was there.

"Q. And Lloyd and Curt was there often? A. Yes. One one day the other the next. * * *"

Cross examination:

"* * * Q. Now Mrs. Graves, you are the same Vicey Graves that Mr. Nicley came and talked to a few days ago, are you not? A. Yes, sir.

"Q. Now when he came there and talked to you, you told him you didn't know a thing in the world about a Will or anything else, didn't you? A. Well, no I didn't know that she had any, she said that she had one, but I never seen it. She said she had made one.

\* \* \* \* \* \*

"The Court: Now let me see, let's get this straight.

She told you that she was going to fix one?

"Mrs. Graves: Yes sir.

"The Court : Now when did she tell you that last?

"Mrs. Graves : Well, that was along in—this last time I was up there with her, she said—

"The Court: How long was it before her death?

"Mrs. Graves: Well, it wasn't too long. She said she had fixed one.

"The Court: Well, now did she say she had fixed it, or did she say she was going to fix it?

"Mrs. Graves: She said she had fixed it, and I asked her if they knowed where it was at, she said, 'No, but they will find it'."

■ Thus there was evidence showing (1) that the testatrix intended to make a will, (2) that she had actually made one and had put it where "they will find it," and (3) the will shows clearly on its face the "animus testandi" of the testatrix. Under these circumstances, it was for the jury, under proper instructions of the trial court, to determine the factual question as to whether the testatrix intended the instrument to operate as her will, and it appears that the jury was so instructed. Carver v. Anthony, 35 Tenn. App. 306, 245 S. W. (2d) 422; Smith v. Smith, 33 Tenn. App. 507, 232 S. W. (2d) 338; Pulley v. Cartwright, supra; Douglass v. Harkrender, 62 Tenn. 114; Sizer's Pritchard Law of Wills and Executors, 2nd Ed., Sec. 23, p. 23, and Sec. 232, pp. 283, 284.

■■ Under our Statute 8098.5, a holographic will is subject to no requisites as to form, and the employment of technical words is not required in order to render an instrument prepared by the testator himself a valid holographic will. It is sufficient if the writing expresses, however informally, a testamentary purpose in language sufficiently clear to be understood, and a holographic will

written by the testator on separate pieces of paper where, as here, the continuity of the language clearly expresses the testator's intention, is entitled to probate.

■ Next, it is urged that the trial court erred in failing to charge the jury (1) that since the paper writing was incomplete, the burden was upon the proponent to prove that the testator had not abandoned the will or was prevented from completing it by "Act of God", and (2) the presumption with respect to an adverse witness who was not only present when the will was found, but who was also present during the trial but did not testify. Inasmuch as the contestant submitted no requests to the court covering these matters, we are unable to consider them.

■ In numerous decisions, the appellate courts of this state have held that inadquate or incomplete instructions to the jury are not reversible error when the party affected thereby fails to call the error to the attention of the court, and when adequate and further instructions are not requested. Brakebill & Hamilton v. South Knoxville Contracting & Const. Co., 14 Tenn. App. 531; Langston v. Memphis St. Ry. Co., 14 Tenn. App. 288; Travis v. Bacherig, 7 Tenn. App. 638; Cochran v. Gaither, 9 Tenn. App. 247; Tevis v. Procter & Gamble Distributing Co., 21 Tenn. App. 494, 113 S. W. (2d) 64; Carney v. Cook, 158 Tenn. 333, 13 S. W. (2d) 322; National Life & Acc. Ins. Co. v. Morrison, 179 Tenn. 29, 162 S. W. (2d) 501. In considering this question our Supreme Court, in Carney v. Cook, supra [158 Tenn. 333, 13 S. W. (2d) 325], said:

"* * *, counsel engaged in a trial should aid the court by calling his attention to an abstraction or an 'inadvertence in delivering his instructions to the jury, and, where they fail to do so, this court will not reverse unless convinced that the party complaining

was prejudiced by such instruction, or that justice is about to miscarry.''

Finally, it is urged that the trial court erred in overruling the defendant's motion for a new trial (1) because one of the jurors did not agree to the verdict, and (2) prejudicial statements made by one of the jurors during the jury's deliberations.

On the motion for a new trial, one of the jurors, Ellis Mallicoat, testified that he did not agree to the verdict returned by the jury, though he admitted that he held up his hand indicating agreement therewith when the verdict was received by the Court. This juror further testified that during the jury's deliberations another juror, whose name was unknown, requested the jury to return a verdict sustaining the will, because the contestant had plenty of money and the case would go to the higher court. Assuming that said remark was made, there has been no affirmative showing that it influenced any of the jurors, and it would be mere speculation to say that it did.

While it is highly improper for jurors to inject into their deliberations information about facts within their own knowledge and not introduced in evidence, this court will not order a new trial unless it shall affirmatively appear that such misconduct influenced or induced the jurors to agree to the verdict. Meegal v. Memphis St. Ry. Co., 34 Tenn. App. 403, 238 S. W. (2d) 519; Code Sec. 10654. Nor are jurors permitted to impeach their verdict and to stultify themselves by later testifying or making affidavits, the substance of which shows that they did not fairly try the case as they had taken oath to do. Act-O-Lane Gas Service Co., Inc., v. Clinton, 35 Tenn. App. 442, 245 S. W. (2d) 795; Waller v. Skeleton, 31 Tenn. App. 103, 212 S. W. (2d) 690.

It results that the assignments of error will be overruled and the judgment below will be affirmed at plaintiff-in-error's costs.

McAmis, P. J., and Hale, J., concur.