HAZEL SMITH ET AL *v.* FRED MACDONALD, SPECIAL
ADMINISTRATOR ET AL

5-5918                                    481 S.W. 2d 741

Opinion delivered June 26, 1972

*Daggett & Daggett,* for appellants.

*Carroll C. Cannon, Dan P. Kennett, Reinberger, Eilbott, Smith & Staten,* by: *Eugene S. Harris,* for appellees.

J. FRED JONES, Justice. Julian Leland Rutherford died on March 4, 1971, and this is an appeal by his collateral heirs (cousins) from an order of the Monroe County Probate Court admitting a handwritten instrument to probate as the holographic will of Julian Leland Rutherford. Neither the testamentary capacity of the decedent nor the total disposition of his property under the terms of the instrument is in issue. The sole issue is one of law as to whether the instrument was admissible to probate as a holographic will. The probate judge held the instrument admissible as the last will and testament

of Julian Leland Rutherford and the appellant heirs contend on appeal that the trial court erred because the instrument was not properly signed by the decedent as required by law.

The record indicates that in June of 1970, following a medical examination in Little Rock, Mr. Rutherford became rather disturbed over the state of his health and consulted his attorney, Fred MacDonald, relative to a will. He did not want his attorney to prepare a will for him[1] but did request and receive from the attorney two forms for a will after the attorney advised him that he could execute a valid will in his own handwriting. Mr. Rutherford showed the will forms to different witnesses and told them he was going to prepare his will. The will forms prepared by Mr. MacDonald were placed in one of Mr. MacDonald's white professional envelopes and delivered unsealed to Mr. Rutherford by Mr. MacDonald. Some days later Mr. Rutherford delivered to attorney MacDonald the envelope in which the will forms had been delivered to Rutherford. The envelope was sealed when Mr. Rutherford delivered it back to Mr. MacDonald and Mr. Rutherford advised Mr. MacDonald that the sealed envelope contained his will and he requested Mr. MacDonald to safely keep the instrument. The sealed envelope when delivered to Mr. MacDonald, bore the notation on the outside of the envelope in Mr. Rutherford's handwriting, "Bill Rutherford—Will." Mr. MacDonald placed the sealed envelope with contents in his safe where it remained until after Mr. Rutherford's death on March 4, 1971, in the Forrest Memorial Hospital in Forrest City, Arkansas. The will forms which Mr. MacDonald had prepared for Mr. Rutherford were found in Mr. Rutherford's wallet following his death and when the envelope was opened in Mr. MacDonald's office, it contained the instrument which is the subject of this controversy. The above factual background only goes to the proof that Mr. Rutherford intended to make a will and thought he had done so. No one questions Mr. Rutherford's intentions, the question is whether the instrument he prepared in his own handwriting met the statutory

---

[1] The attorney was named executor without bond.

requirements for admission to probate as a holographic will. The pertinent part of the instrument admitted to probate appears as follows:

"Page 1
Will of Julian Leland Rutherford

I Julian Leland Rutherford of Monroe County, Arkansas, being over the age of twenty one years and of sound and disposing mind and memory, do hereby make, publish and declare this to be my last will and testament, hereby revoking all wills here-to-fore made by me at any time.

1.  I direct that all my just debts be paid as soon after my death as may be practicable.

2.  I hereby nominate, constitute and appoint as Executor of my estate to serve without bonds Fred MacDoanld.

3.  I make the following specific bequests. . ."

The instrument then sets out under alphabetically arranged paragraphs, separate bequests not germane to the issues before us, and after the last bequest the instrument ends in the decedents handwriting as follows: "Witness my hand and seal this 11 day of July 1970."

The appellants argue that the trial court erred in admitting the will to probate and argue that the instrument is not a legal testamentary instrument because it is not signed by the testator. The appellants further argue that a holographic will must be signed by the testator at the end of the instrument notwithstanding the dicta expressed to the contrary in *Weems* v. *Smith*, 218 Ark. 554, 237 S.W. 2d 880.

The appellees point out that the decedent's signature clearly appears in his own handwriting in two places on the face of the instrument and also on the envelope in which the instrument was sealed. The appellees also argue that either of these signatures, but in any event the

three of them combined, completely satisfy the statute as to signature under Ark. Stat. Ann. § 60-404 (Repl. 1971). The probate judge agreed with the appellees and we agree with the probate judge in this particular case.

Prior to the enactment of our present probate code, by Act 140 of 1949, the legal requirements for the mode in the execution of all valid wills were set forth in five separate paragraphs under § 14512 of Pope's Digest, vol II, as follows:

"Mode. Every last will and testament of real or personal property, or both, shall be executed and attested in the following manner,

First. It must be subscribed by the testator at the end of the will, or by some person for him, at his request.

Second. Such subscription shall be made by the testator in the presence of each of the attesting witnesses, or shall be acknowledged by him to have been so made to each of the attesting witnesses.

Third. The testator, at the time of making such subscription, or at the time of acknowledging the same, shall declare the instrument so subscribed to be his will and testament.

Fourth. There shall be at least two attesting witnesses, each of whom shall sign his name as a witness, at the end of the will, at the request of the testator.

Fifth. Where the entire body of the will and the signature thereto shall be written in the proper handwriting of the testator or testatrix, such will may be established by the unimpeachable evidence of at least three disinterested witnesses to the handwriting and signature of each testator or testatrix, notwithstanding there may be no attesting witnesses to such will; but no will without such subscribing witnesses shall be pleaded in bar of a will subscribed in due form as prescribed in this act."

It will be noted that this statute specifically refers to "every last will and testament" and specifically requires as the *first* requirement, that it *must be* subscribed by the testator *at the end of the will* or by some person for him at his request. Then requirement No. 5, as above set out, was the only provision pertaining to the holographic will and only had to do with the proof of the will where the entire body, as well as the signature thereto, was in the handwriting of the testator or testatrix. By Act 140 of 1949, Ark. Stat. Ann. §§ 60-403-60-404 (Repl. 1971) holographic wills were excepted from the section pertaining to other wills, and holographic wills were given a separate section in the Digest. Under § 60-404 the requirements pertaining to holographic wills were completely removed from the requirements in the execution of other wills as provided in § 60-403. These two sections of the present probate code are as follows:

"60-403. Execution. The execution of a will, *other than holographic,* must be by the signature of the testator and of at least two [2] witnesses as follows:

a. Testator. The testator shall declare to the attesting witnesses that the instrument is his will and either
(1) Himself sign; or
(2) Acknowledge his signature already made; or
(3) Sign by mark, his name being written near it and witnessed by a person who writes his own name as witness to the signature; or
(4) At his discretion and in his presence have someone else sign his name for him, (the person so signing shall write his own name and state that he signed the testator's name at the request of the testator); and
(5) *In any of the above cases the signature must be at the end of the instrument* and the act must be done in the presence of two [2] or more attesting witnesses.

b. Witnesses. The attesting witnesses must sign at the request and in the presence of the testator.

60-404. Holographic will.—Where the entire body

of the will and the signature thereto shall be written in the proper handwriting of the testator, such will may be established by the evidence of at least three [3] credible disinterested witnesses to the handwriting and signature of the testator, notwithstanding there may be no attesting witnesses to such will."

(Emphasis added).

Thus, it is seen that the 1949 statute still retains the original primary requirements as to wills *other than holographic* and subsection 5 of § 60-403, *supra*, requires that in the execution of wills (other than holographic) the instrument must still be signed by the testator or acknowledged by him in the manner set out in the statute and "the signature must be at the end of the instrument."

Turning now to the requirements for holographic wills under § 60-404; it is clear, as we have already said, *this section does not require a signature of the testator at the end of the instrument. Weems* v. *Smith, supra.* In comparing § 14512 of Pope's Digest, *supra*, with the two sections, §§ 60-403—60-404 of the present code, there is considerable room for speculation as to the legislative intent in completely removing holographic wills from the requirements as applied to other wills and leaving other wills (other than holographic) to be executed "by *the signature of the testator.* . .at the end of the instrument. . ."

We shall not indulge in surmising as to the legislative intent in separating holographic wills from the requirements pertaining to other wills, for regardless of legislative intent, there is no question that Act 140 of 1949 separated holographic wills from the strict requirements as to manner and place of signature required in the execution of wills other than holographic under § 60-403, *supra*. Such relaxation as to holographic wills does not appear illogical when we consider that the purpose of a will is to make disposition of property to take effect upon death, and the purpose of the statute relative to signature, is to protect against fraud. *Anthony*

v. *College of the Ozarks*, 207 Ark. 212, 180 S.W. 2d 321.

The appellants recognize the question involved in this case as one of first impression in Arkansas, and they urge us to follow the decisions of the California courts where similar cases have been decided under a statute similar to our own. The appellants quote extensively from the 1917 California case of *In re Manchester's Estate*, 174 Cal. 417, 163 P. 358, and point out that the facts in *Manchester* were almost on all fours with those in the case at bar and they urge us to adopt the rule laid down in *Manchester* and reach the same conclusion the California court reached in that case. We find no fault with the reasoning expressed by the California court in announcing its "true rule" in *Manchester*, but we are of the opinion that the Califormia courts made better application of the rule in the cases following the *Manchester* decision. A review of these decisions points to a trend toward logic in determining the intention of the testator in placing his signature at a particular place on his will even under the "true rule" announced in *Manchester*.

The Civil Code of California under which the *Manchester* will was written, then as now, provided as follows:

"A holographic will is one that is entirely written, dated and signed by the hand of the testator himself. It is subject to no other form, and need not be witnessed."

The pertinent portion of the will in *Manchester* recited as follows:

"January 14th, 1914
I, Matilda Manchester, leave and bequeath all my estate & effects, after payment of legal, funeral & certain foreign shipment expenses (as directed) to the following legatees, viz."

The instrument ended as follows:

"Whereunto I hereby set my hand this fourteenth day of January, 1914."

The name of the decedent did not appear on the paper anywhere except in the opening clause as above shown. The document was folded by the decedent and placed in an envelope, which was then sealed and indorsed by the decedent in her own handwriting with the words, "My will, Ida Matilda Manchester." At her direction the instrument was placed in her safety deposit box where it was found after her death. The instrument was admitted to probate by the trial court but the Supreme Court of California reversed, holding that under the California Code and Webster's Dictionary, the required signature under the code.

> "means the signature of the testator in his own handwriting written somewhere in or upon the document, with the intention by so writing it to authenticate the document. The name written at another place than the end of the document, and not for the purpose of authenticating it and indicating its completion, but merely to identify the person who is making the will, cannot be deemed to be a name 'signed' to the document, unless that word is given a meaning entirely different from that which it is generally understood to have."

The court then pointed out that the closing words, "Whereunto I hereby set my hand this. . ." were apt words to a signature in attestation of a will or deed and intended to show that the decedent intended to sign immediately below but failed to carry out that intention. The court then distinguished the cases wherein different pages of holographic wills were written at different times, some of which were signed and some not, but properly admitted to probate under the theory of integration.

The court in *Manchester* also distinguished a will in the *Estate of Camp* (66 P. 227) where the final clause and signature of a holographic will was torn off and destroyed after the death of the testator and proof was made by two credible witnesses under the provision of the Code of Civil Procedure. The court in *Manchester* points out that the initial clause of the will in *Camp* also contained the

name of the testator, and the court in *Camp* said that this also established the fact that the document was intended by the decedent to be his last will, and that "the writing by him of his name in that clause was itself a sufficient signature." The court in *Manchester* then announced the rule above referred to as follows:

> "The true rule, as we conceive it to be, is that, wherever placed, the fact that it was intended as an executing signature must satisfactorily appear on the face of the document itself. If it is at the end of the document, the universal custom of mankind forces the conclusion that it was appended as an execution, if nothing to the contrary appears. If placed elsewhere, it is for the court to say, from an inspection of the whole document, its language as well as its form, and the relative position of its parts, whether or not there is a positive and satisfactory inference from the document itself that the signature was so placed with the intent that it should there serve as a token of execution. If such inference thus appears, the execution may be considered as proven by such signature."

The court in *Manchester* concluded that:

> "[T]he document in question was not signed by the testator, as required by section 1277, and that it is not entitled to probate."

In the later 1927 California case of *In re Morgan's Estate*, 253 P. 702, the proffered instrument recited as follows:

> "Last will and testament of Ynez Morgan
> February 21, 1925
> I, Ynez Morgan, hereby will and bequeath all that I possess in real and personal property to my cousins, Kenneth and Alma Prior.
>
> It is my wish that my aunt, Mrs. A. G. Prior, be executrix without bond."

This instrument was found among the effects of Ynez Morgan after her death and after contest the probate court found it to be a valid holographic will, entirely written, dated and signed by the testatrix, and the instrument was admitted to probate as the last will and testament of the decedent. In affirming the probate court the Supreme Court of California said:

> "The name, Ynez Morgan, appears twice in the instrument, and the only question before the court on this appeal is whether or not the decedent, by writing her name in either, or both, of said places, thereby 'signed' the will."

The court then quoted and adhered to the "true rule" as laid down in *Manchester, supra,* and then said:

> "The will here in question makes complete disposition of the property of the decedent and designates the person who shall have charge of the administration of her estate. It in all respects appears to be a completed document. . .If the words, 'Last will and testamarie of Ynez Morgan,' appeared at the end of the will, all doubt that the signature was intended to be and was adopted as the final executing signature in authentication of and in execution of the document as a completed testamentary act would be removed. Looking at the instrument as a whole, we are of the view that, by the use of those words in the beginning of the instrument, it was the intention of the testatrix to thereby execute the document as a will.
>
> So recently has this court discussed this question and reviewed the authorities that nothing further need be added. We are satisfied that the finding of the probate court to the effect that the testatrix duly authenticated and executed the instrument as her last will and testament is sustained by the inferences arising from an inspection of the document itself.
>
> The order appealed from is affirmed."

In the still later 1964 case of *In re Rowe's Estate,* 41 Cal. Rptr. 52, the holographic will of Ethel C. Rowe was admitted to probate. The will simply recited as follows:

"Will of Mrs. Ethel C. Rowe
Jan. 16th 1962
I appoint Mr. Emil R. Walter and Atty James Abercrombie as administrators without Bond.
I bequeath my orange and olive groves to Emil R. Walter.
I bequeath all other real estate to my sister Mrs. Edith Cairns Russell if she survives me. Any bank deposits I have on my death can be used by Emil R. Walter to pay taxes.
I consider all other relatives financially able to take of themselves. If any one/
        other than those named in this will
claims any part of my possessions they are to receive one dollar.
        Signed this day Jan 16th 1962"

This document was found in a desk drawer in the decedent's home after her death. A sister of the decedent filed a petition for revocation of the probate order admitting the will to probate. She contended that the decedent failed to dispose of all of her property under the instrument and relying on *Manchester, supra,* she argued that the instrument was not subject to probate because if was not signed by the author. She contended that the failure of the decedent to dispose of all of her property indicated a lack of intention to execute the instrument as a will. The petition was denied by the probate court and the sister appealed to the District Court of Appeals for the Fifth District of California. In sustaining the probate court in admitting the instrument to probate as the last will and testament of the decedent, the appellate court recited the "true rule" as laid down in *Manchester, supra,* and distinguished the two cases by pointing out that in *Manchester* the recitation "Whereunto I hereby sign my hand this fourteenth day of January 1914" was in the present tense and indicative of *intention* to sign. Whereas the instrument in *Rowe* appeared to be a completed will; that

the last sentence fixed the date of execution and used the past tense of the word "sign," i.e. "signed," to indicate that the instrument had already been signed. The court in *Rowe* then cited a number of California cases since *Manchester* including the very interesting 1952 case of *In re Bloch's estate,* 248 P. 2d 21, in which the California Supreme Court upheld the probation of an instrument in the handwriting of Helene I. Bloch. The instrument was found in the lock box of Helene I. Bloch after her death and consisted of an envelope with writing on both sides. It named an executor, disposed of the property belonging to Helene I. Bloch and the only place where the decedent's name appeared on the instrument was in reference to a part of her property as follows:

"Bonds belonging solely to Helene I Bloch 8000.00"

The Supreme Court in that case said:

> "The language of the document involved here is plainly dispositive in character, and the document was dated and was admittedly written by the hand of the decedent. The sole question is whether the decedent's name, which appears only in the body of the instrument, constitutes a signature within the meaning of the statute.

> It is settled in California that the signature need not be located at the end but may appear in another part of the document, provided the testator wrote his name there with the intention of authenticating or executing the instrument as his will."

After citing a number of California decisions, the Supreme Court then continues:

> "The instrument involved in the present case, as we have seen, discloses a testamentary intent, and, in our opinion, constitutes a complete testamentary document under the foregoing decisions. The writing, on its face, indicates that the testatrix did everything that she intended to do: She specified that the

bonds which belonged solely to her were to be distributed equally among seven named individuals; she excluded her husband from sharing in this bequest, giving reasons for doing so; and she appointed her sister executrix and directed her to resist any action which might be taken by the husband. The document, after giving the reasons of the testatrix for exclusion of her husband, ends, in a natural manner by stating: 'Therefore I feel he does not participate.' * * *

Since it appears that the holographic document written by Mrs. Bloch is a complete testamentary instrument, it follows, under the decision in Estate of Kinney, supra, 16 Cal. 2d 50, 56, 104 P. 2d 782, that her name is to be regarded as having been written in the body of the instrument with authenticating intent. The order is affirmed."

Justice Traynor wrote a dissenting opinion in *Bloch, supra,* reciting his view that the mere name of the decedent used in describing her property did not fulfill the statutory requirement. Justice Traynor's minority opinion is of value in that it points out the following distinctions:

"Regardless of where the name may appear in the instrument, there is always the possibility, of course, that it was intended as a signature. The mere existence of that possibility, however, is not enough to permit a reasonable inference that it was so intended. When the name is used to identify the decedent as the author of the alleged will as in Estate of Kinney, 16 Cal. 2d 50, 104 P. 2d 782 ('I Anna Leona Graves Kinney, do bequeath all my possessions to my four sisters') or to identify the instrument as decedent's will as in Estate of Brooks, 214 Cal. 138, 4 P. 2d 148 ('This is my will—Elizabeth Ryan Brooks'), and in addition the instrument appears to be a complete testamentary document, it may reasonably be inferred that the name was placed where it was with the intention of executing the instrument. In such cases the name is linked to the alleged testamentary act and the pro-

babilities that it was intended as a signature are strong. In the present case, on the contrary, decedent's name appears only in the description of her property."

Returning now to the case at bar, there is no question that Mr. Rutherford intended to make a will and there is no question that he attempted to do so. There is no question of fraud involved in this case and there is no question that Mr. Rutherford thought he had executed a valid holographic will. There is no question that Mr. Rutherford completely disposed of all of his property under the instrument offered in probate, even to a provision for taking care of his dogs after his demise. Looking now to the language employed, the first line on page one of the instrument defines the instrument in the handwriting of the decedent as follows: "Will of Julian Leland Rutherford." The first paragraph then recites: "I Julian Leland Rutherford. . .do hereby make, publish and declare this to be my last will and testament." The last line of the instrument then recites: "Witness my hand and seal this 11 day of July, 1970." There is no evidence in the record that Mr. Rutherford did not write "Witness my hand and seal . . ." on the same day he wrote "I Julian Leland Rutherford. . .*do hereby* make, publish and declare this to be my last will and testament." (Emphasis added).

Even if we should adopt and strictly apply the California rule announced in *Manchester* as urged by the appellants, the instrument signed by Rutherford would qualify as a holographic will subject to probate under the subsequent decisions of the California courts. But in this case Mr. Rutherford delivered the sealed envelope to his attorney and told him that it contained his will. All other evidence clearly indicates that when Mr. Rutherford delivered the instrument to his attorney, he had fully carried out his announced intentions of disposing of his property by will to the exclusion of the appellants.

In Page on Wills, vol. 2, § 20.9, p. 294, is found the following:

"There is a conflict of authority concerning the admissibility of evidence of testator's declarations and acts, together with surrounding circumstances,

to determine whether his name which was written by him in the body of the will was intended as a signature. The weight of authority permits introduction of such evidence for the purpose of determining the intention with which testator wrote his name."

We conclude, therefore, that the trial court did not err in admitting the instrument to probate as the last will and testament of Julian Leland Rutherford, and that the judgment of the probate court should be affirmed.

Affirmed.

HARRIS, C. J., not participating.