Gayle Ramage NELSON & William Robert
RAMAGE *v.* TEXARKANA HISTORICAL SOCIETY
and MUSEUM et al

74-182                                    516 S.W. 2d 882

Opinion delivered December 16, 1974
[Rehearing denied January 20, 1975.]

*Atchley, Russell, Waldrop & Hlavinka,* by: *Stephen Cohen,* for appellants.

*Autrey & Weisenberger,* for appellees.

LYLE BROWN, Justice. This is a will contest case. The appellants are Gayle Ramage Nelson and William Robert Ramage, niece and nephew, and sole heirs at law of the testatrix, Maye Elizabeth Ramage Davis; the appellees are Texarkana Historical Society and Museum and State First National Bank of Texarkana, the special administrator. The probate court admitted to probate an instrument purporting to be the will of Maye Elizabeth Ramage Davis, a widow 78 years of age. The holographic instrument was not signed; the only place in the purported will where her name appeared was in the body thereof.

Appellants contend that decedent's name appearing in the body of the instrument was not written with the intent of authenticating or executing such instrument and therefore it was error to admit it to probate. Appellees contend (1) the signature in the body of the will satisfied the requirements for validity, and (2) the court correctly considered extrinsic evidence to show decedent's testamentary intent.

The instrument admitted to probate reads as follows:

Will December 18th 1973

I am in my sane mind today.

And I am leaving all my antiques in the living room, dining room and Victorian room and hall to Texarkana Museum in memory of my mother and father, W. R.

Ramage and brother Robert Ramage and Maye Elizabeth Ramage Davis. I leave my little Pet Petite to my friend Waneeta Corzine phone — 832-3001 — no answer ring 832-1666. I want three hundred dollars taken out of my savings account at Commercial bank for Petites upkeep.

I want the house sold and money to pay any outstanding debts and for the upkeep of Antiques for Museum. I want my kitchen stove, frigidaire and everything in kitchen for Samantha Washington — my maid. I want my XL 100 television to go to Elnora Edwards my maid. I want all my jewelry a fifteen hundred dollar diamond ring all my jewelry and furs to Ethel Gandy my cousin and clothes — Montgomery Alabama. Address 3393 Lebron St. Zip 36106.

Any money on savings pay my monthly bills.

Signed and Witnessed by (Signed) Nell Phillips

(Signed) Samantha Washington

Witness Nell Phillips, an antique dealer, testified as to her business dealings and many personal visits with the testatrix; that on December 18, 1973, the testatrix produced the will and asked Mrs. Phillips to witness it; and that she recognized the handwriting as that of the testatrix. Another antique dealer, Jack Cunningham, testified he saw the testatrix frequently; that he could identify the instrument as having been written in her handwriting; and that he discussed with testatrix the desirability of leaving her valuable collection of antiques to the museum. Cora Cook Thomas testified she and the testatrix had been good friends since high school days; that she could identify the will as being in testatrix's handwriting; that testatrix had discussed with the witness the subject of a will and she told testatrix to have two witnesses. Catheline Cunningham, another friend of many years standing, testified she was aware that testatrix intended to leave her antiques to the museum; and that the will was entirely in the handwriting of Maye Elizabeth Ramage Davis. Appellant Gayle Ramage Nelson, niece and close

neighbor of testatrix, testified that she had not been in the latter's home for several years, conceding that she and testatrix were not very close, in fact indicated there was some feeling of animosity.

Elnora Edwards, who is mentioned in the will, cooked breakfast for the testatrix during the last eighteen months of the latter's life; she said she was made aware that she would be remembered in the will; and that on the morning of December 20, testatrix said she had made her will and it was on top of the piano along with a list of pallbearers. Samantha Washington said she had worked for Mrs. Davis for some fifteen years. She said she witnessed the will on December 18; that Mrs. Phillips came in and witnessed it; and that testatrix told Ms. Washington to put the will on top of the piano.

Under the provisions of our probate code of 1949, the signature of a testator need not be written at the end of the will. "Where the entire body of the will and the signature thereto shall be written in the proper handwriting of the testator, such will may be established by the evidence of at least three credible disinterested witnesses to the handwriting and signature of the testator, notwithstanding there may be no attesting witnesses to such will." Ark. Stat. Ann. § 60-404 (Repl. 1971). *Smith* v. *MacDonald*, 252 Ark. 931, 481 S.W. 2d 741 (1972).

If the testator's name is written in or upon some part of the will other than at the end thereof, to be a valid signature it must be shown that the testator wrote his name where he did with the intention of authenticating or executing the instrument as his will. 2 Bowd-Parker: Page on Wills, § 20.9; *Estate of Kinney*, 16 Cal. 2d 50, 104 P. 2d, 782 (1940). Thus our problem is to determine whether the name Maye Elizabeth Ramage Davis was placed in the body of the will with the intent that it constitute a signature in addition to the intention of creating a memorial. In the second paragraph of the will we find the only mention of testatrix's name: "And I am leaving all my antiques . . . in memory of my mother and father, W. R. Ramage and brother Robert Ramage and Maye Elizabeth Ramage Davis."

Appellees rely heavily on our case of *Smith* v. *MacDonald,* supra. But the facts in that case are far different from the facts in the case at bar. The first line in that will describes the instrument as the "Will of Julian Leland Rutherford." The first paragraph recites: "I, Julian Leland Rutherford . . . do hereby make, publish and declare this to be my last will and testament." The last line of the instrument then recites: "Witness my hand and seal this 11 day of July, 1970."

We have abstracted at some length the testimony of the witnesses. The most that evidence shows is that the instrument was in the handwriting of the testatrix and that she considered it as her will. It would be sheer speculation to assume that those circumstances indicated that she intended her name in the body of the will to be her signature thereto.

Cited at length by appellees is the California case of *In re Bloch's Estate,* 248 P. 2d 21 (1952). In that case the single location of the name of the deceased was in the body of the will; in disposing of some bonds the testatrix there referred to "Bonds belonging to Helene I. Bloch." The court held that reference to constitute a signature. We discussed *Bloch* in our case of *Smith* v. *MacDonald.* We did not adopt the decision but merely referred to it as a "very interesting case". In fact we quoted with apparent approval from the dissenting opinion in that case of Justice Traynor:

> Regardless of where the name may appear in the instrument, there is always the possibility, of course, that it was intended as a signature. The mere existence of that possibility, however, is not enough to permit a reasonable inference that it was so intended. When the name is used to identify the decedent as the author of the alleged will as in Estate of Kinney, 16 Cal. 2d 50, 104 P. 2d 782 ("I Anna Leona Graves Kinney, do bequeath all my possessions to my four sisters") or to identify the instrument as decedent's will as in Estate of Brooks, 214 Cal. 138, 4 P. 2d 148 ("This is my will — Elizabeth Ryan Brooks"), and in addition the instrument appears to be a complete testamentary document, it may reasonably be inferred that the name was placed where it was with the intention of executing the instru-

ment. In such cases the name is linked to the alleged testamentary act and the probabilities that it was intended as a signature are strong. In the present case, on the contrary, decedent's name appears only in the description of her property.

The legislature had a sound basis for requiring that a holographic will be signed by the testator, because that signature is the best and most reliable indication that the signer means for the instrument to be his will. We think, and so hold, that to adopt the majority rule in *Bloch* would amount to writing the word "signature" out of the statute.

Reversed and remanded.

FOGLEMAN, J., dissents.

JOHN A. FOGLEMAN, Justice, dissenting. The majority opinion seems to be hinged, at least in part, upon Justice Traynor's dissent in *In Re Bloch's Estate*, 39 Cal. 2d 570, 248 P. 2d 21 (1952). I respectfully submit that we did not cite this dissent with approval in *Smith v. MacDonald*, 252 Ark. 931, 481 S.W. 2d 741. We commented that Bloch was an interesting case, and that the dissenting opinion was of value in pointing out distinctions. We were discussing the California rule as set out in *In Re Manchester's Estate*, 174 Cal. 417, 163 P. 358 (1917), which we had been urged to adopt by the unsuccessful appellant. The *Manchester* rule was quoted as follows:

> The true rule, as we conceive it to be, is that, wherever placed, the fact that it was intended as an executing signature *must satisfactorily appear on the face of the document itself*. If it is at the end of the document, the universal custom of mankind forces the conclusion that it was appended as an execution, if nothing to the contrary appears. If placed elsewhere, it is for the court to say, *from an inspection of the whole document,* its language as well as its form, and the relative position of its parts, whether or not there is a positive and satisfactory inference *from the document itself* that the signature was so placed with the intent that it should there serve as a token of execu-

tion. If such inference thus appears, the execution may be considered as proven by such signature. [Emphasis mine]

From the discussion of these cases in the opinion in *Smith* v. *MacDonald,* supra, it is clear that California does not permit extrinsic evidence to show surrounding circumstances as an aid to the court in determining whether a testator who wrote his name in the body of a will intended to do so as a signature.

The concluding language in *Smith* v. *MacDonald,* supra, clearly shows that we did not adopt either the majority or dissenting opinion in *Bloch* and that we rejected in toto the California rule we were being urged to adopt. That language is:

> Even if we should adopt and strictly apply the California rule announced in *Manchester* as urged by the appellants, the instrument signed by Rutherford would qualify as a holographic will subject to probate under the subsequent decisions of the California courts. *But in this case Mr. Rutherford delivered the sealed envelope to his attorney and told him that it contained his will. All other evidence clearly indicates that when Mr. Rutherford delivered the instrument to his attorney, he had fully carried out his announced intentions of disposing of his property by will* to the exclusion of the appellants. [Emphasis mine]

In Page on Wills, vol. 2, § 20.9, p. 294, is found the following:

> "There is a conflict of authority concerning the admissibility of evidence of testator's declarations and acts, together with surrounding circumstances, to determine whether his name which was written by him in the body of the will was intended as a signature. The weight of authority permits introduction of such evidence for the purpose of determining the intention with which testator wrote his name."

We conclude, therefore, that the trial court did not err in

admitting the instrument to probate as the last will and testament of Julian Leland Rutherford, and that the judgment of the probate court should be affirmed.

This clearly put us in accord with the weight of authority, but it seems to me that the majority is now willing to adopt the California rule. I concede that under the California rule the Davis will should not have been admitted to probate, even though the *Bloch* majority would have required that it be. I submit also that the Bloch will would have been subject to probate if extrinsic evidence such as that presented here had been admitted. I would not recede from the rule obviously adopted by us in the rather recent case above cited and would examine this instrument in the light of the prevailing circumstances.

First, we must consider the findings and conclusions of the probate court. Those significant are:

> The Decedent left as her Last Will a written instrument dated the 18th day of December, 1973. The entire body of the Will and the signature thereto was in the proper handwriting of the Testatrix, and this was established by the testimony of four (4) credible disinterested witnesses to the handwriting and signature of the Testatrix and other evidence before the Court.

> \* \* \* \* \* \* \* \* \* \* \* \*

> (1) That the said handwritten instrument dated December 18, 1973, described above and heretofore filed herein be admitted to probate as the holographic Will of the Decedent, Maye Elizabeth Ramage Davis;

> (2) That the said holographic Will of the Decedent was executed in all respects according to law when the Decedent was competent to do so and acting without undue influence, fraud or restraint;

Unless appellees failed to meet their burden of proof or these findings are clearly against the preponderance of the evidence, we should affirm the judgment. What then were the

surrounding circumstances shown by the extrinsic evidence?

The entire instrument was written in the handwriting of Mrs. Davis. Its entire content is testamentary in nature. It is a complete testamentary document. It contains at the end the words "Signed and witnessed by", not the words "signed by and witnessed by". The testamentary provisions are all in the first person. Mrs. Davis was the only surviving child of the person named by her in the instrument as her father. Her brother was Robert Ramage and he was named by her as such in the document. She had a dog named Petite. She had a friend named Waneeta Corzine, an employee of a veterinarian, and this friend frequently bathed and brushed the dog for her. She had indicated her total dependence upon Ms. Corzine for this care of the pet. Under this instrument this friend would not only get the dog, but a fund for the maintenance of this pet. Mrs. Davis recorded in the written instrument the telephone numbers by which Ms. Corzine could be reached. When she was lonely, she called this friend to talk about dogs.

Mrs. Davis was very interested and knowledgeable about antiques and would not dispose of any she owned unless she had run out of money. On the day the instrument was dated, she told Nell Phillips that she had made her will and asked Mrs. Phillips to sign it as a witness. She related to Mrs. Phillips that she was ill and her state of health was getting worse and that she wanted to make the will before she died or went to the hospital. Mrs. Phillips, an antique dealer, had previously suggested that Mrs. Davis leave her property to the Texarkana Museum. Approximately three weeks prior to the date of the instrument, Mrs. Davis, by telephone, discussed making a will with Jack Cunningham, another antique dealer. He also suggested that she leave her property to the Texarkana Museum, rather than her church.

Cora Cook Thomas, a lawyer's daughter and longtime friend, had written her own will and had advised Mrs. Davis that it was in longhand. She also told Mrs. Davis what she should say in a will and to have two witnesses. On December 20, when Leola (Elnora) Edwards came to prepare breakfast, Mrs. Davis said she had made out her will and Mrs. Phillips

and Samantha Washington, another servant, had signed it. Both of these servants were legatees under the will. This instrument, a list of pallbearers, and a statement about the writing of an obituary were kept together in the place where Mrs. Davis specifically directed that the testamentary document be placed and left.

Mrs. Davis was estranged from appellants, her only heirs at law, and had specifically stated that she did not want to leave her property to them because they had not done anything for her. The admitted facts show there was considerable justification for this feeling. This was not an unnatural will, but a very natural one.

Evidence of surrounding circumstances will inevitably be circumstantial as to the ultimate facts in a case such as this. The testimony about the circumstances in this case are undisputed. They lead to the logical inference that Mrs. Davis did treat her name in the body of the instrument as her signature to her will. If she had not so intended, it is highly unlikely that she would have written her full name instead of using the simple pronoun "me" or the word "myself". Under all the circumstances, it seems to me that the trial court drew the only logical inference.

I would affirm the judgment.