In the Matter of the ESTATE OF Robert E. ERICKSON, Deceased.

**Tatsumi Misaka, Petitioner.**

No. 890110.

Supreme Court of Utah.

Feb. 21, 1991.

Herschel J. Saperstein, Ken P. Jones, Salt Lake City, for Tatsumi Misaka.

Randy S. Ludlow, Salt Lake City, for the Estate of Robert E. Erickson.

ZIMMERMAN, Justice:

Petitioner Tatsumi Misaka challenges a decision by the Utah Court of Appeals reversing a trial court decision that admitted to probate a holographic will written by decedent Robert E. Erickson. *In re Estate of Erickson*, 766 P.2d 1085 (Utah Ct.App. 1988). The court of appeals found that Misaka had failed to prove that Erickson wrote his name with an intent to affix his signature to the instrument, as required by section 75-2-503 of the Code for a valid holographic will. Utah Code Ann. § 75-2-503 (1978); Utah Code Ann. § 68-3-12(2)(r) (Supp.1990). We granted certiorari, and we now affirm the decision of the court of appeals.

Robert Erickson died in June of 1983. A formal will executed in 1955 was admitted to probate, and the court appointed the designated personal representative. In October of 1985, Misaka filed a petition for probate of a holographic will dated August 22, 1973. The instrument Misaka filed consisted of three handwritten note cards, three inches by five inches, lacking page numbers.[1] Mr. Erickson's name appears only in the exordium clause of the instrument, which states, "Last will & Test I Robert E. Erickson do hereby state that I leave and bequeath to the following persons...."

At trial, Misaka presented evidence that the three cards were in Erickson's handwriting, evidence that was not controverted by the estate. Misaka also submitted evidence that Erickson's handwritten name on the cards was written in a style that matched the signature he used on certain checks and stock certificates and that the cards were written by the same person who had signed the checks and stocks. The estate submitted evidence that Erickson frequently made notes to himself on file cards similar to the ones on which the instrument was written and that he was sometimes intoxicated when he did so. The estate contended that, at most, the cards contained notes of terms that might be used in some future will that was never prepared.

The trial court found that the instrument was a valid holographic will and admitted it to probate. The court of appeals reversed on the ground that Misaka had not met his burden of proving that Erickson intended the handwritten name in the exordium to be his signature. We granted certiorari, and we now affirm.

---

1. The three cards read as follows, with unreadable portions indicated:

    8/22/73 Last Will & Test I Robert E. Erickson do hereby state that I leave and bequeath to the following persons of my family & others on my demise I want to leave to my wife Dorothy Erickson the home at 1378 Blaine Ave. until she remarries, after which the home shall be sold & ½ go to her & ¼ to REE Jr. & ¼ to Sheryl Ann Erickson

    the F.H. Store shall go ¼ to Dorothy ¼ to REE Jr ¼ to Sheryl A [unreadable] the oth-

    er ¼ is owned by T. Misaka The condominium at Park City is to go To ¼ REE Jr ¼ to Sheryl & ½ T T [Madaka or Masaka] My Interest in Nevada Scratch to Go to Dorothy in total

    My Insurance to cover my interest in the Holladay store to go to Dorothy in total—$50,000 or more. Other stock Interests—Some Zions Utah Bank Croft to go to Sheryl & Bobby Share & Share alike

Misaka raises two related issues. The first is whether the estate properly preserved before the trial court the question of Erickson's "signatory intent," i.e., whether he intended the handwritten name on one card to be a signature. The second issue is whether the court of appeals erred in concluding that Misaka had not met his burden of proving Erickson's signatory intent.

■ On the first point, we conclude that the signatory intent issue was adequately preserved and could properly be reached by the court of appeals. At trial, the estate offered evidence disputing Misaka's claim that the handwritten name matched Erickson's signature, and it argued that the location of the name in the instrument did not justify the inference that it was intended to be a signature. This was sufficient to preserve the claim that the note cards did not constitute a valid holographic will because they did not contain the "signature" of the testator, as required by section 75–2–503. Utah Code Ann. § 75–2–503 (1978). We therefore proceed to the main issue: whether the written name in the instrument was intended to be a signature.

Some background is helpful. Testamentary transfers of property are governed by statute. *In re Love's Estate*, 75 Utah 342, 347, 285 P. 299, 301 (1930); *In re Wolcott's Estate*, 54 Utah 165, 168, 180 P. 169, 170 (1919). There may be, however, an inherent conflict between observing the formalities imposed by statutes and giving effect to testamentary intent. The Utah Uniform Probate Code ("UUPC"), adopted by the Utah legislature and based on the Uniform Probate Code, recognizes this conflict and attempts to give effect to testamentary intent by minimizing unnecessary technicalities even where attested wills are concerned. The UUPC states that its "underlying purposes and policies" include an aim to "simplify and clarify the law concerning the affairs of decedents" and to "discover and make effective the intent of a decedent in distribution of his [or her] property." Utah Code Ann. § 75–1–102(2)(a), (b) (1978).

■ When it comes to holographic wills, the UUPC provisions go even further in an attempt to give priority to testamentary intent by eliminating all but a few technical requirements. The purpose of the holographic will provisions is to allow laypersons to prepare their own wills without the expense or rigorous formalities of attested wills. *See* Utah Code Ann. § 75–2–503 (editorial board comment) (1978). As the editorial board of the UUPC stated in its comment to title 75, chapter 2, part 5 of the Code, "The basic intent of these sections is to validate the will whenever possible." Utah Code Ann. tit. 75, ch. 2, pt. 5 (editorial board comment) (1978).

■ Section 75–2–503 of the Code, which is part of the UUPC, establishes the minimum requirements for holographic wills. It states in part, "A will which does not comply with section 75–2–502 [dealing with formal wills] is valid as a holographic will, whether or not witnessed, if the *signature* and the material provisions are in the handwriting of the testator." Utah Code Ann. § 75–2–503 (1978) (emphasis added). Section 68–3–12(2)(r), which contains the rules of statutory construction applicable to the statutes in general, defines "signature" as including "any name, mark, or sign written *with the intent to authenticate* any instrument or writing." Utah Code Ann. § 68–3–12(2)(r) (Supp.1990) (emphasis added). Taken together, these two sections indicate that a "signature" is essential to a valid holographic will and that a written name is a "signature" only if it is made with "the intent to authenticate" the will.

This requirement of signatory intent raises exactly the same potential for conflict with the decedent's testamentary intent as does any other formal will requirement. *See* Mechem, *The Rule in Lemayne v. Stanley*, 29 Mich.L.Rev. 685, 706–07 (1929). Nevertheless, although the UUPC endeavors to minimize the formal requirements for holographic wills, those requirements that the statute does impose may not be avoided. *See In re Love's Estate*, 75 Utah at 347, 285 P. at 301; *In re Wolcott's Estate*, 54 Utah at 168, 180 P. at 170.

In the present case, the trial court implicitly found that the handwritten name in the opening paragraph of what appears to be the first of the cards was written with signatory intent. The court of appeals re-

versed, finding the evidence legally insufficient on this point.

■ We first canvass the law regarding signatory intent. If the signature appears at the end of an instrument, particularly if it is part of an attestation clause, signatory intent clearly may be inferred. Annotation, *Place of Signature of Holographic Wills*, 19 A.L.R.2d 926, 928–29 (1951 & Later Case Serv.1982 & Supp.1990) [hereinafter Annotation, *Holographic Wills*]. The court of appeals correctly held, however, that section 75–2–503 does not require that the signature appear at the end of the instrument. *In re Estate of Erickson*, 766 P.2d at 1088. The problem of proof of signatory intent is more difficult where, as here, the signature appears somewhere other than at the end of the instrument.

A review of the literature and cases dealing with signatory intent in situations where there is not a signature at the end of the instrument indicates that the kind of evidence to determine signatory intent that is considered by courts generally falls into two broad categories. *See generally* Annotation, *Holographic Wills*, 19 A.L.R.2d at 939. The first is extrinsic evidence, such as documentary evidence or the testimony of witnesses regarding the purpose behind the signing. *See, e.g., In re Roberts' Will*, 251 N.C. 708, 112 S.E.2d 505 (1960); *Nicley v. Nicley*, 38 Tenn.App. 472, 276 S.W.2d 497 (1954), *cert. denied*, 38 Tenn.App. 472, 276 S.W.2d 497 (1955).

■ The second source of evidence of signatory intent that is commonly considered is evidence instrinsic to the instrument and includes the completeness of the document as a testamentary instrument. *See* Annotation, *Holographic Wills*, 19 A.L.R.2d at 939. If it is complete, a handwritten name in an exordium or elsewhere in the will may be considered a signature.

*See, e.g., In re Moody's Estate*, 118 Cal. App.2d 300, 257 P.2d 709 (Ct.App.1953); *Smith v. MacDonald*, 252 Ark. 931, 481 S.W.2d 741 (1972); *Burton v. Bell*, 380 S.W.2d 561 (Tex.1964); *Estate of Black*, 30 Cal.3d 880, 641 P.2d 754, 181 Cal.Rptr. 222 (1982). However, when the document does not appear to be a complete testamentary instrument, no inference of validity attaches to a handwritten name located other than at the end. *See, e.g., Hamlet v. Hamlet*, 183 Va. 453, 32 S.E.2d 729 (1945); *In re Leonard's Estate*, 1 Cal.2d 8, 32 P.2d 603 (1934).[2]

■ We now turn to the facts of the case at hand. The evidence offered regarding signatory intent consisted of the instrument itself and the extrinsic evidence that the handwritten name matched Erickson's signature on checks and other business documents. Assuming that the trial court was correct in finding that the handwriting on the cards matched Erickson's handwriting, the only other evidence of signatory intent, and the evidence that we consider here, appears on the face of the document itself. This evidence is not in dispute. The appropriate standard of review when evidence is not in dispute is that all issues are questions of law, which we review for correctness.[3] *See In re Love's Estate*, 75 Utah at 347, 285 P. at 301; *see also Henretty v. Manti City Corp.*, 791 P.2d 506, 510 (Utah 1990); *Transamerica Cash Reserve v. Dixie Power & Water, Inc.*, 789 P.2d 24, 25–26 (Utah 1990); *State ex rel. Division of Consumer Protection v. Rio Vista Oil, Ltd.*, 786 P.2d 1343, 1347 (Utah 1990); *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985).

■ We first note that the estate argues that the cases requiring "completeness" in the holographic instrument mean that the

---

**2.** We note that some cases hold that even when the instrument appears fairly complete, the courts require independent evidence of signatory intent. *See, e.g., Bamberger v. Barbour*, 335 Ill. 458, 460, 167 N.E. 122, 123 (1929); *Davis v. Davis*, 86 Okla. 255, 257, 207 P. 1065, 1066 (1922). We believe, however, that this position is unnecessary *and substantially conflicts with* the purposes of the UUPC.

**3.** If the trial court hears disputed evidence on the question of the decedent's signatory intent, the reviewing court should defer to the trial court's findings of fact unless clearly erroneous. *See In re Yowell's Estate*, 75 Utah 312, 329, 285 P. 285, 294 (1930); *see also Grayson Roper Ltd. Partnership v. Finlinson*, 782 P.2d 467, 470 (Utah 1989); *Reid v. Mutual of Omaha Ins. Co.*, 776 P.2d 896, 899 (Utah 1989); *In re Estate of Bartell*, 776 P.2d 885, 886 (Utah 1989).

instrument must be a complete disposition of the testator's property. We reject this view. The statutes do not require that a holograph must dispose of all the testator's property, just as there is no such requirement for formal wills. "Completeness" in this context means that the instrument must appear to be a completed instrument, not a complete disposition of all the decedent's property.

Viewing the instrument as a whole, we conclude that the court of appeals was correct in ruling that the instrument does not have sufficient indicia of completeness to support an inference that Erickson intended his name in the exordium to be his signature. Nothing about the instrument indicates that the second and third cards could not be interchanged. More importantly, the instrument as we have it before us contains nothing to indicate that Erickson had finished his writing. Nothing indicates that the instrument actually ends at the bottom of the third card. There is no attestation clause or final note, as is often present in the documents validated as holographic wills. *See, e.g., Smith v. MacDonald,* 252 Ark. 931, 933, 481 S.W.2d 741, 742 (1972). Although the third card is filled to the end with writing, there is no evidence as to whether Erickson had continued the instrument on additional cards or some other paper. Therefore, we can give little weight to the lack of further writing space on the other cards as an indicia of completeness. *See, e.g., Estate of Leonard,* 1 Cal.2d 8, 32 P.2d 603 (1934); *Hamlet v. Hamlet,* 183 Va. 453, 32 S.E.2d 729 (1945).

Both parties cite Justice Traynor's dissent in *In re Bloch's Estate,* 39 Cal.2d 570, 576, 248 P.2d 21, 24 (1952) (Traynor, J., dissenting), to support their respective positions. Justice Traynor argued that when the name of the decedent appears in the body of an instrument that otherwise appears to be a "complete testamentary document," the function that the name serves may indicate whether the decedent intended the name to be a signature. *Id.* at 576–77, 248 P.2d at 24–25. Misaka argues that the function of Erickson's name in the instrument before us would support a find-

ing of signatory intent under the analysis proposed by Justice Traynor.

We agree that the function of the name in the exordium, to identify Robert E. Erickson as the author of the instrument, is consistent with the functions cited by Justice Traynor as supporting signatory intent. *See id.; see also Smith v. MacDonald,* 252 Ark. 931, 481 S.W.2d 741, 748 (1972); Annotation, *Holographic Wills,* 19 A.L.R.2d at 939–49. However, as the estate argues, a complete instrument is a prerequisite to such a finding of signatory intent. As we have noted, this instrument does not have sufficient indicia of completeness to justify a factual inference that the name in the exordium was intended to be a signature. We therefore find the trial court's finding of signatory intent without adequate factual support and affirm the court of appeals.

HALL, C.J., HOWE, Associate C.J., and STEWART and DURHAM, JJ., concur.